DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**YEINSON TORRES HURTADO** and **VIVIANA HURTADO ESCOBAR,**
Appellants,

v.

**NIGEL DESOUZA,**
Appellee.

Nos. 4D12-1817 and 4D13-1469

[April 15, 2015]

Consolidated appeals and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Howard Harrison, Senior Judge and Edward Fine, Judge; L.T. Case No. 502010CA016866.

Scott A. Cole and Anne C. Sullivan Magnelli of Cole, Scott & Kissane, P.A., Miami, for appellants.

Andrew J. Rader of Cutler Rader, P.L., Deerfield Beach, and Bard D. Rockenbach and Adam J. Richardson of Burlington & Rockenbach, P.A., West Palm Beach, for appellee.

**ON MOTION FOR REHEARING**

MAY, J.

We grant the defendants' motion for rehearing, vacate our prior opinion, and substitute this opinion in its place.[1]

The defendant appeals an adverse judgment arising from a minor rear-end auto accident. Arguing the trial court erred in admitting irrelevant and prejudicial evidence, the defendant requests a new trial. The plaintiff separately appeals the same judgment arguing the trial court erred in setting off unemployment compensation from the judgment. We consolidated the appeals and treated the plaintiff's appeal as a cross-appeal. Based on the new standard for establishing harmless error in a

---

[1] There are two defendants, the husband driver and his wife. For ease of reference, and because the husband drove the vehicle, he will be referred to in the singular throughout the opinion.

civil case, we now reverse the judgment and remand the case for a new trial. We also reverse on the cross-appeal.

The defendant argues the trial court erred in admitting certain prejudicial evidence concerning the plaintiff's claim for mental anguish damages and the financial hardship he and his wife suffered as a result of the accident. Initially, we agreed the admission of this evidence constituted error, but believed the error harmless under the existing law. *Special v. Baux*, 79 So. 3d 755 (Fla. 4th DCA 2011). The Supreme Court of Florida subsequently issued its decision in *Special v. West Boca Medical Center*, 39 Fla. L. Weekly S676 (Fla. Nov. 13, 2014), clarifying the test for harmless error in a civil case. Applying the new standard, we cannot say that the admission of this evidence was harmless because the plaintiff failed to "prove that the error complained of did not contribute to the verdict." *Id.* at *1.

The plaintiff filed a personal injury claim after the defendant rear-ended his car while stopped at a traffic light. The defendant filed an answer denying all allegations and asserting affirmative defenses, including a set-off for government benefits. Just prior to trial, the defendant admitted liability, but causation and damages remained for the jury to determine.

In opening statement, plaintiff's counsel told the jury that immediately after the accident, the defendant did not check on the plaintiff or apologize. Mid-sentence, defense counsel requested a sidebar. Concerned that plaintiff's counsel was about to suggest that the defendant attempted to flee the scene of the accident, he argued these facts were irrelevant and prejudicial.

Plaintiff's counsel responded that his client suffered mental anguish due to the defendant's failure to check on him after the accident, failure to apologize, and delay in admitting liability. He suggested that the defense had opened the door in *voir dire* by telling the jury that "[w]e admitted liability, and they filed suit." The trial court overruled the objection.

When plaintiff's counsel addressed defense counsel's comment on the admission of liability during *voir dire*, the trial court sustained a defense objection. Plaintiff's counsel again commented about the delay in admitting liability. The court sustained another defense objection. Defense counsel then moved for a mistrial based on plaintiff's counsel's comment on the defendant's attempt to leave the accident scene.

When the trial court questioned counsel about the plaintiff's mental anguish claim for the defendant's delay in admitting liability, defense

2

counsel advised the court that Florida did not support a claim for mental anguish on that theory. Nevertheless, the court overruled the objection, denied the motion for mistrial and request for a curative instruction, and allowed defense counsel to assert a continuing objection. Plaintiff's counsel then told the jury that the delay in admitting liability "left a hole . . . of unrequited victimization" in the plaintiff. Defense counsel again moved for a mistrial and a curative instruction, which the court denied.

At the end of opening statement, plaintiff's counsel told the jury that the plaintiff, a commercial pilot, was unable to fly for two years because of the accident, lost his house in foreclosure, and could not seek medical treatment because he had no health insurance. While defense counsel did not object to this comment, he again moved for mistrial. The trial court denied the motion, but suggested the issue might be revisited.

The plaintiff described the accident. He was stopped at a red light when the defendant's vehicle hit him from behind. At the time of the collision, his head was turned to the right looking at his wife and son. He instantly felt pain in his neck. His vehicle did not "look like it was damaged" and the "bumper was in a little bit from the trunk, but that was about it."

When he got back in his vehicle, he told his wife, "I think I'm hurt." He felt a slight tingling and numbness in his fingers and pain radiating down his left shoulder and arm. Over defense objection, the trial court permitted the plaintiff to testify that the defendant never apologized to him for the accident and wanted to leave the scene. The plaintiff told the defendant that he could be arrested if he left the scene, and the defendant remained.

His wife then testified that the plaintiff could not afford required flight training, their house went into foreclosure, and the plaintiff stopped medical treatment because they were unable to afford it. Defense counsel objected to the medical treatment question, which the trial court overruled.

The day after opening statement, defense counsel provided case law concerning the plaintiff's mental anguish claim. This had been the subject of the motion for mistrial the day before, which the trial court denied. The court directed a verdict on mental anguish damages.

The trial court told plaintiff's counsel he could not question the plaintiff about the issue. In response, plaintiff's counsel moved for mistrial, which was also denied. The court then read the following curative instruction written by the defense without objection from plaintiff's counsel.

3

The Court has found and now instructs you, the jury, that as a matter of law Plaintiff Nigel DeSouza is not entitled to claim or recover damages for any mental anguish, if any, Plaintiff Nigel DeSouza claims was caused by defendants not admitting negligence sooner than has been presented at this trial. The jury is hereby instructed to disregard any such claim and any mention already made thereof.[2]

Not surprisingly, the testimony concerning the plaintiff's physical complaints and injuries and whether they existed before the accident was hotly contested, as was their causation. Testimony revealed that the plaintiff had failed to advise the hospital or his new treating doctor that he had complained of neck pain and headaches for a year preceding the accident and for which he sought medical treatment. The plaintiff's new treating doctors diagnosed him with a herniated disc caused by the accident, which required significant treatment over the course of a lifetime. The defense experts found no permanent injury, but a temporary aggravation of a pre-existing injury. They did not believe any further treatment was necessary.

The jury found the plaintiff sustained a permanent injury, the defendant was liable, and awarded $1,002,238.17 in damages.

On appeal, the defendant argues that the admission of the plaintiff's evidence of mental anguish damages and financial hardship was irrelevant and prejudicial, resulting in an unwarranted million dollar plus verdict for a minor accident. Specifically, he argues the trial court erred in allowing testimony that he attempted to flee the scene, never checked on the plaintiff or apologized, and failed to admit fault until just prior to trial.

The plaintiff responds that evidence of fleeing the scene was relevant to causation, and if not relevant, was cured by the trial court's instruction. The plaintiff suggests the defendant opened the door to the financial hardship evidence. Lastly, he argues any error was harmless.

We review an order denying a motion for new trial for an abuse of discretion. *Izquierdo v. Gyroscope, Inc.*, 946 So. 2d 115, 117 (Fla. 4th DCA 2007). Similarly, we review evidentiary rulings for an abuse of discretion. *Nationwide Mut. Fire. Ins. Co. v. Bruscarino*, 982 So. 2d 753, 754 (Fla. 4th DCA 2008).

---

[2] At the defendant's request, the court included the special instruction in its final instructions to the jury.

"[E]vidence concerning liability is irrelevant and prejudicial when . . . the defendant admits entire responsibility for the accident and only the amount of damages remains to be decided . . . ." *Metro. Dade Cnty. v. Cox*, 453 So. 2d 1171, 1172–73 (Fla. 3d DCA 1984) (internal citations omitted). Indeed, we have held that "[t]he purpose of damages . . . [is] to compensate, not to make the defendant care, 'take responsibility,' or say [he] was sorry." *Intramed, Inc. v. Guider*, 93 So. 3d 503, 507 (Fla. 4th DCA 2012).

Here, plaintiff's counsel discussed the mental anguish issue during opening statement over defense objection. The plaintiff testified concerning the mental anguish he suffered due to the defendant's desire to leave the accident scene, failure to apologize, and failure to admit liability until just prior to trial. Ultimately, the trial court granted a directed verdict on the mental anguish claim, but the damage had been done. Error occurred in the admission of this evidence. *Id.*

Florida has a long-standing rule that "no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's." *Batlemento v. Dove Fountain, Inc.*, 593 So. 2d 234, 241 (Fla. 5th DCA 1991). Courts are very adamant about this rule because jurors have a tendency to favor the poor as against the rich, especially when provoked by inflammatory evidence. *Sossa v. Newman*, 647 So. 2d 1018, 1019–20 (Fla. 4th DCA 1994).

Here, plaintiff's counsel told the jury that his client lost his home in foreclosure and was unable to seek medical treatment because there was no health insurance. The plaintiff and his wife testified to their financial situation, including the house foreclosure and general lack of money, preventing the plaintiff from seeking medical treatment. This testimony ran afoul of the general prohibition against injecting a party's poverty or financial status into the trial.

We initially found error in the admission of both the mental anguish testimony and the plaintiff's financial problems following the accident, but found the errors harmless. We therefore affirmed the judgment. But, under the new standard announced in *Special v. West Boca Medical Center*, 39 Fla. L. Weekly S676 (Fla. Nov. 13, 2014), we can no longer say that the errors were harmless.

The test for harmless error now "requires the beneficiary of the error to prove that the error complained of did not contribute to the verdict." *Id.* at *1. "[T]he beneficiary of the error must prove that there is no reasonable possibility that the error complained of contributed to the verdict." *Id.* The plaintiff simply cannot sustain his burden in this appeal.

This was a minor auto collision. The trial court allowed the plaintiff to testify about the mental anguish he suffered from the defendant's desire to leave the scene, failure to apologize, and failure to admit negligence until just prior to trial. Testimony revealed the plaintiff's pre-existing headaches, neck pain, numbness, and tingling. Yet, the jury awarded the plaintiff an amount in excess of a million dollars. The plaintiff has not proven "that there is no reasonable possibility that the error[s] complained of contributed to the verdict." *Id.*

We therefore reverse and remand the case for a new trial. With that said, we next address the set-off of unemployment benefits, as the issue may arise again after a retrial.

On cross-appeal, the plaintiff argues that the collateral source statute does not allow for a set-off of unemployment compensation benefits.[3] The defendant responds that unemployment benefits fall within the purview of the collateral source statute. The issue is whether unemployment compensation is a collateral source subject to a set-off under section 768.76, Florida Statutes.

We have de novo review. *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007).

Common law prohibited a set-off of collateral source benefits. *Sheffield v. Superior Ins. Co.*, 800 So. 2d 197, 200 n.3 (Fla. 2001). "Section 768.76 abrogated the common law collateral source rule and replaced it with a statutory provision that allows certain payments from collateral sources to be set off from a plaintiff's recovery." *Coop. Leasing, Inc. v. Johnson*, 872 So. 2d 956, 959 (Fla. 2d DCA 2004) (citing § 768.76, Fla. Stat. (1997)).

The collateral source statute provides:

---

[3] Unemployment compensation has been renamed "reemployment assistance." § 443.036(38), Fla. Stat. (2012). "Reemployment assistance" is defined as, "cash benefits payable to individuals with respect to their unemployment pursuant to the provisions of this chapter. . . . Any reference to reemployment assistance shall mean compensation payable from an unemployment fund as defined in 26 U.S.C. s. 3306(f)." *Id.* Under section 443.091's "benefit eligibility conditions," the person seeking reemployment assistance must be "able to work and is available for work." § 443.091(1)(d), Fla. Stat. (2012). "Able to work" is defined as "physically and mentally capable of performing the duties of the occupation in which work is being sought." § 443.036(1), Fla. Stat. (2012).

6

(1)   In any action . . . in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to the claimant, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists.   Such reduction shall be offset to the extent of any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant or members of the claimant's immediate family to secure her or his right to any collateral source benefit which the claimant is receiving as a result of her or his injury.

(2)   For purposes of this section:

(a)   "Collateral sources" means any payments made to the claimant, or made on the claimant's behalf, by or pursuant to:

1.   The United States Social Security Act, except Title XVIII and Title XIX; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, except those prohibited by federal law and those expressly excluded by law as collateral sources.

2.   Any health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by her or him or provided by others.

3.   Any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental, or other health care services.

4.   Any contractual or voluntary wage continuation plan provided by employers or by any other system intended to provide wages during a period of disability.
. . . .

7

§ 768.76(1)–(2), Fla. Stat. (2012). Both parties focus on section 768.76(2)(a)1. in support of their respective positions. However, neither that subsection nor the remaining subsections provide for a set-off of unemployment compensation benefits.

"The plain meaning of the statute is always the starting point in statutory interpretation." *Edgar*, 967 So. 2d at 785. "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Id.* (quoting *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984)).

Using the plain meaning of the statute, unemployment benefits do not fall within sections 768.76(2)(a)1.–4. Under subsection (2)(a)1., unemployment compensation is not provided pursuant to "[t]he United States Social Security Act, except Title XVIII and Title XIX." § 768.76(2)(a)1., Fla. Stat. It is also not provided for under "any federal, state, or local income disability act." *Id.* The plain reading of "income disability act" means an act that provides income assistance for persons with a disability. A person cannot qualify for unemployment compensation unless he or she is physically able to work; unemployment compensation cannot fit within the term "income disability act." §§ 443.091(1)(d), .036(1), Fla. Stat.

Subsection (2)(a)2. refers to "health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits." § 768.76(2)(a)2., Fla. Stat. Like subsection one, this subsection relates to insurance that provides benefits for health, sickness, and disability, which are all types of insurance suggesting the person is unable to work. As previously mentioned, unemployment compensation is available only to persons who are physically able to work. This subsection therefore cannot cover unemployment compensation benefits.

Subsection (2)(a)3. refers to a "contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the *costs of hospital, medical, dental, or other health care services.*" § 768.76(2)(a)3., Fla. Stat. (emphasis added). For the same reason expressed above, unemployment compensation does not fall within its purview.

And last, unemployment compensation is not a "contractual or voluntary *wage continuation plan* provided by employers or by any other

8

system *intended to provide wages during a period of disability.*" § 768.76(2)(a)4., Fla. Stat. (emphasis added). Although Florida does not define "wage continuation plan," the Code of Federal Regulations does.

The provision entitled "amounts expended for medical care," states in part, "if under a wage continuation plan the taxpayer is entitled to regular wages during a period of absence from work due to *sickness or injury.*" 26 C.F.R. § 1.105-2 (2012). This section cites to section 1.105-4, which has been removed from the Code of Federal Regulations. That section previously defined "wage continuation plan" as, "[a]n accident or health plan . . . under which wages, or payments in lieu of wages, are paid to an employee for a period during which he is absent from work on account of a personal injury or sickness."

Unemployment compensation would not fall under this section as it does not involve sickness or injury. *See* § 443.091(1)(d), Fla. Stat. In fact, the person seeking unemployment compensation must be physically able to work. *See* § 443.036(1), Fla. Stat.

The purpose of section 768.76 is "[t]o prevent double recovery by the claimant." *Budget Rent-A-Car Sys., Inc. v. Castellano,* 764 So. 2d 889, 891 (Fla. 4th DCA 2000) (citing § 768.76, Fla. Stat. (1997)). But, because unemployment compensation benefits are not specifically listed in section 786.76 and cannot be interpreted as a collateral source under any of its provisions, the trial court erred in setting off those benefits from the final judgment.

*Reversed and Remanded.*

WARNER and TAYLOR, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**