GROSS, J.
In this pharmaceutical malpractice case, Minnie Guider contended that Intramed, Inc. negligently filled her prescription with the wrong drug. Ultimately, the defendant admitted liability and the case went to trial on damages. Guider recovered a verdict of $1,948,843.50; of this amount, $1,425,920 was for future medical expenses and $395,000 was for future pain and suffering for the ninety-two year old plaintiff. We reverse for a new trial on damages. Serial improprieties in the plaintiffs closing argument, when combined with the procedural prejudice of the untimely disclosure of an expert, operated to deny the defendant a fair trial.
I
Guider filed her complaint on December 23, 2009. The defendant served its answer and affirmative defenses on January 12, 2010. Guider noticed the case for trial oh March 12, and the court set the case for jury trial on a three-week calendar beginning on August 2. While the pretrial order required expert witness disclosure no later than ninety days prior to trial,[1] the parties’ attorneys acted as if the requirement was more honored in the breach than the observance. Between May 4 and May 19, Guider disclosed four experts, one identified as a “Primary Care physician for over ten years” and the rest identified as “treating physicians.”
On June 11, Guider filed a motion for speedy trial due to “her age and medical condition” under section 415.1115, Florida Statutes (2010), which provides that a party “over the age of 65” in a civil action “may move the court to advance the trial on the docket.” The trial court granted the motion and set the trial on August 16. At the defendant’s request, the trial was reset as the number-one trial for September 27, 2010. In July, Guider provided a witness list that listed as experts only the four doctors she disclosed in May. Over the summer, both parties worked on discovery based on the May through July disclosures.
On August 23, Guider served a new expert witness list that added Dr. Craig Lichtblau, without specifying his connection to the case. Two days later, Guider’s attorney sent defense counsel a letter identifying Lichtblau as “a medical doctor and rehabilitation specialist” who would be “testifying regarding the Plaintiffs need for future care.” On September 1 and September 8, Guider served new expert witness' lists adding two additional experts. The parties were unable to schedule a deposition for Dr. Lichtblau in August and early September.
Given the impending trial date, the defendant moved to strike the new experts or, in the alternative, for a continuance. At the September 17 hearing on the motion, the trial court denied the motion for continuance, stating, “Let me tell you about continuances. This lady is ninety-two years old. When we set the date, I made it crystal clear that this case was going.” At that time, the court also denied *506 the motion to strike the experts and did not permit an examination of Guider under Florida Rule of Civil Procedure 1.360.
At his September 23 deposition, Licht-blau disclosed that he had first treated Guider in March, 2010.[2] Lichtblau opined that Guider’s life expectancy was from four to ten years, that she would need twenty-four hour care, seven days a week, for the rest of her life, at a cost of between twenty-five dollars and thirty-five dollars an hour. Lichtblau obtained his cost figures from his staff minutes before the deposition and then created his opinion.
Later, the defendant moved in limine to preclude Dr. Lichtblau’s testimony about future medical care and treatment. Guider had been cared for by her family and did not list future medical expenses as an item of claimed damage in her answers to interrogatories. The defendant argued that the plaintiff first injected future cost-of-care figures into the case through Licht-blau, who based his opinion on information he obtained the day of the September 23 deposition. The trial court denied the motion. Guider’s late disclosure of Lichtblau prevented the defendant from securing a rebuttal expert.
At trial, Guider published Licht-blau’s deposition about life expectancy and the cost of her future care; he was the plaintiffs only witness on cost of her future care. His opinion on life expectancy exceeded the 4.1 year time period derived from the mortality tables. The trial court sustained Guider’s objection to having the defendant’s expert opine on life expectancy because it was a new opinion. The plaintiffs life expectancy was a significant issue in the case; based on Dr. Lichtblau’s opinion about future cost of care, the jury’s verdict suggests that it found that Guider’s life expectancy was between 4.7 and 6.5 years.
Section 415.1115 allows a trial judge, “after a consideration of the age and health of the party” to “advance the trial on the docket.” A party’s request to advance the trial under the statute is akin to a defendant’s demand for a speedy trial under Florida Rule of Criminal Procedure 3.191, where a defendant is deemed to have represented that he “has diligently investigated the case” and is “timely prepared for trial.” Fla. R.Crim. P. 3.191(g). Where a party seeks to take advantage of section 415.1115, she should be largely finished with the disclosure obligations of civil discovery. A party may not use section 415.1115 as a shield from the consequences of late discovery disclosure and a sword to cut off the opposition’s ability to prepare for trial.
Here, after securing an early trial setting under the statute, Guider waited until August 23 to disclose Dr. Lichtblau. The attorneys’ summer vacation schedules complicated the setting of a deposition, which did not occur until September 23, four days before trial. Dr. Lichtblau was the plaintiffs most significant damages witness. The trial court abused its discretion in failing, at the very least, to grant a continuance to allow the defendant to secure a rebuttal expert and to arrange for a rule 1.360 examination of Guider.
II
During the closing argument, plaintiffs attorney made a number of comments that switched the focus of the case from proper issues—the plaintiffs life expectancy and past and future damages—to punishing the defendant for the “wrongful con *507 duct” of defending the case in court. These are some of counsel’s arguments:
The only way to get this company to care is to force them to pay all of the harms they have caused. That’s what the law is for, to get a company to care, to change, to do what is right.
They have never taken responsibility. They have been forced to admit they sent the wrong medication ... and they still take zero responsibility.
How did they respond? Have you heard sorry once in this courtroom, we are sorry we sent you the wrong medication? ... Not one time have you heard that, not from there, not anywhere.
There are things your verdict cannot fix ... But you can fix the harms that were caused her, the way they defend this case.
[The defendant] will get off cheap. [The defendant] will sweep it under the rug. [The defendant] will move on. [The defendant] won’t change. [The defendant] won’t care.
It doesn’t matter what [the defendant] do[es] as a company. [They] can get off cheap if [they] want. Slap on the wrist. How do you ask her that? How do you defend yourself that way? How does a company defend itself that way?
The trial court’s rulings early in the closing argument green lighted this theme for plaintiffs counsel.
The closing argument shifted the focus of the case from compensating the plaintiff to punishing the defendant. The life expectancy of the plaintiff and the cost of her future care were legitimate issues for the defense. The purpose of damages here was to compensate, not to make the defendant care, “take responsibility,” or say it was sorry. Counsel’s arguments improperly suggested that the defendant should be punished for contesting damages at trial and that its defense of the claim in court was improper. See Carnival Corp. v. Pajares, 972 So.2d 973, 977-78 (Fla. 3d DCA 2007); State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377, 380 (Fla. 3d DCA 2005); Chin v. Caiaffa, 42 So.3d 300, 309 (Fla. 3d DCA 2010); Health First, Inc. v. Cataldo, 92 So.3d 859 (Fla. 5th DCA 2012). The closing argument was designed to inflame the emotions of the jury rather than prompt a “logical analysis of the evidence in light of the applicable law.” Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010, 1028 (Fla.2000).
When viewed together, the errors in this case could be harmless only if the appellee could demonstrate that it is more likely than not that the errors “did not influence the trier of fact and thereby contribute to the verdict.” Special v. Baux, 79 So.3d 755, 771 (Fla. 4th DCA 2011), rev. granted sub nom. Special v. W. Boca Med. Ctr., 90 So.3d 273 (Fla.2012). The untimely disclosure of Dr. Lichtblau compromised the defendant’s ability to defend on the issue of damages. The closing argument urged the jury to punish the defendant for having the temerity to be in court. The jury’s verdict found significant damages and indicated a long life expectancy under the circumstances. The errors were not harmless.
We therefore reverse the final judgment and remand for a new trial on damages. We have fully considered the issue regarding the Continuous Quality Improvement manual and find no error.
POLEN, J„ and BLOOM, BETH, Associate Judge, concur.

. The pretrial order provided in pertinent part:
NO LATER THAN NINETY (90) DAYS PRIOR TO TRIAL — EXPERT WITNESS DISCLOSURE (Filed with the Clerk and served on all counsel). The parties shall furnish opposing counsel with the names and address, along with complete and updated curriculum vitae of all expert witnesses to be called at trial; and all information regarding expert testimony that is required by Fla. R. Civ. P. 1.280(b)(4)(A)....

. Indeed, on appeal, Guider takes the position that Lichtblau was a “treating physician.” Prior to its inclusion on the August 23 witness list, Dr. Lichtblau’s name did not appear in any of Guider’s responses to numerous interrogatories or requests for production.