STEVENSON, J.
Appellant, Heather Reffaie, challenges the trial court’s final judgment, which *1074 found her eighty percent comparatively negligent for her slip and fall at a Wal-Mart store, and the trial court’s denial of her motion for new trial. Appellee, Wal-Mart, cross appeals, arguing that its proposal for settlement, deemed invalid by the trial court, was clear and definite and strictly complied with the rules of civil procedure. We reverse the appeal in part and order a new trial on damages; we affirm the cross-appeal. We write to briefly discuss our agreement with appellant’s claims that defense counsel’s improper closing argument concerning the treating physician’s unsubstantiated business relationship with personal injury lawyers and their clients amounted to reversible error.
Upon entering a Wal-Mart, appellant slipped and fell. Appellant alleged there was a slippery substance on the floor and that she sustained injuries requiring neck and shoulder surgeries. Wal-Mart alleged that appellant was comparatively negligent. The jury returned a verdict finding that Wal-Mart was negligent and its negligence resulted in injuries to appellant. In its application of the doctrine of comparative negligence, the jury found that Wal-Mart was twenty percent negligent, while appellant was eighty percent negligent. The jury awarded appellant $49,158 for medical expenses and $50,000 for past pain and suffering, equaling an award of $99,158. Twenty percent of that total— the award to which appellant was entitled based on the jury’s finding of comparative negligence — equaled $19,800. After the verdict was read, appellant moved for a new trial, which motion was denied.
During cross-examination, defense counsel engaged appellant’s expert witness and treating neurologist, Dr. Gomez, in a line of questioning related to his relationships with personal injury law firms.
[Defense Counsel]. Now, you have existing business relationships with certain personal injury lawyers, specifically Kanner & Pintaluga, where they refer you clients throughout the State of Florida, don’t they?
[Dr. Gomez]. Again, what do you mean by “business relationship”?
[Defense Counsel]. I mean, they sign up a client and bus them to your office, ... for you to treat them and eventually come to a court of law, and that’s your relationship with at least one personal injury law firm, correct?
[Dr. Gomez]. That is not true.
Although there was some back and forth between defense counsel and Dr. Gomez after the preceding questioning, Dr. Gomez never admitted that any part of the statement was true.
At another point, the following exchange took place:
[Defense counsel]. Is it your testimony under oath that you are currently unaware of, let’s say, at least five, as much as ten, personal injury plaintiffs being placed in a van, being driven ... to your office in West Palm Beach for you to perform percutaneous discectomies and driven back for the purposes of litigation?
[Dr. Gomez]. That was brought up in a deposition, which I was not aware of, their form of transportation.
[Defense counsel]. I don’t even know what you’re talking about because I don’t have that deposition, but I assume that I am accurate, correct?
[Dr. Gomez]. I’m not sure you’re accurate because I don’t know that to be fact.
Defense counsel also inquired about Dr. Gomez’s financial compensation from the attorneys based on referrals. Dr. Gomez replied that he receives payment from pa *1075 tients for the treatment he provides and did not admit to receiving any payment from the law firms. Appellant’s counsel objected to this line of questioning for relevancy. The trial court overruled the objection.
In closing argument, with respect to Dr. Gomez, defense counsel argued in pertinent part:
Then comes Dr. Gomez. Now, Dr. Gomez, what he does is he has existing relationships with personal injury law firms. They sign them up and bus them over.
.... [At this point, there was an objection by appellant’s counsel for facts not in evidence. The trial court overruled the objection and instructed the jury to rely on its own memory of the evidence.]
I had the whole conversation. At least five, maybe as many as ten, get down to your office, you do a procedure, a five-minute procedure. After all of them you bus them right back up for the purposes of litigation. He took umbrage with the word “transport” or “bus”, (emphasis added).
An appellate court reviews a trial court’s ruling on motions for mistrial and new trial for abuse of discretion. Abbott v. Dorleans, 41 So.3d 984, 986 (Fla. 4th DCA 2010); Veltre v. State, 957 So.2d 47, 50 (Fla. 4th DCA 2007). This court has explained that “ ‘[t]he legal standard for trial courts to use in deciding motions for new trial based upon counsel’s improper argument is whether the commentary was highly prejudicial and inflammatory.’ ” Grushoff v. Denny’s, Inc., 693 So.2d 1068, 1069 (Fla. 4th DCA 1997) (citation omitted). Here, the remarks were objected to at trial; thus, the issue was preserved for review. Further, the standard is whether the remarks were egregious enough to be considered harmful error. See, e.g., Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010, 1029 (Fla.2000); Tanner v. Beck ex rel. Hagerty, 907 So.2d 1190, 1197 (Fla. 3d DCA 2005).
To determine whether an error is harmful, the appellate court must examine the entire record. Special v. Baux, 79 So.3d 755, 771 (Fla. 4th DCA 2011), review granted sub norm. Special v. W. Boca Med. Ctr., 90 So.3d 273 (Fla.2012). “The focus of the analysis is to evaluate the effect of the error on the trier of fact to determine whether or not the error contributed to the judgment.” Id. Simply stated, the practical lesson from Special on harmless error is that:
[H]armless error occurs in a civil case when it is more likely than not that the error did not contribute to the judgment. To avoid a new trial, the beneficiary of the error in the trial court must show on appeal that it is more likely than not that the error did not influence the trier of fact and thereby contribute to the verdict.
Id. Under the harmless error analysis discussed in Special, the appellate court does not review the entire record to determine if a critical mass of evidence exists to support the verdict despite the error. Rather, in reviewing the record, Special commands that the appellate court’s gaze remain fixed upon the error itself so as to evaluate whether the beneficiary of the error has shown that, more likely than not, the error did not influence the trier of fact and thereby contribute to the verdict. Id. at 766 (noting that “[a]n ‘effect on the fact finder’ test asks the appellate judge to look closely at the error and estimate its effect on the trier of fact”) (citing State v. DiGuilio, 491 So.2d 1129 (Fla.1986)).
Here, appellant correctly argues that there was no evidence to support defense counsel’s argument in closing that *1076 law firms transported their clients to Dr. Gomez en mass, or that Dr. Gomez had any “business relationships” with personal injury law firms. At one point, defense counsel even suggested that it was Dr. Gomez who bused the clients “right back up for the purposes of litigation.” We agree that the improper comments at issue were intended to, and did, impugn the doctor’s credibility and objectivity in the eyes of the jurors. While we have little issue with the line of questioning, the problem here is that defense counsel did not obtain the desired answers but continued in closing argument as though he had.
It is the appellee’s burden, Wal-Mart in this case, to show that the statements in closing argument, more likely than not, did not influence the jury’s verdict. As appellant argued in her supplemental brief, “Wal-Mart painted a picture of an assembly-line surgeon, whose medical practice is fueled by personal injury litigation,” notwithstanding that defense counsel never got Dr. Gomez to admit those insinuations nor presented any independent evidence of their truthfulness.
After a review of the entire record, we cannot conclude that Wal-Mart has shown that the improper comments, more likely than not, did not contribute to the verdict. While in no means dispositive, we note that despite medical bills in the amount of $150,000, the jury awarded only $49,158 for medical expenses. We therefore conclude that the trial court abused its discretion in denying appellant’s motion for new trial. From our review of the record, we are also confident that the effect of the improper comments was limited to damages.
Accordingly, we reverse and remand for a new trial on damages only. In all other respects, the appeal and cross-appeal are affirmed.

Affirmed in part, reversed in part, and remanded.

TAYLOR and HAZOURI, JJ., concur.