DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY, PHILIP MORRIS USA INC.,
LORILLARD TOBACCO COMPANY and LIGGETT GROUP LLC,**
Appellants,

v.

**MARVINE CALLOWAY,** as Personal Representative of the **ESTATE OF
JOHNNIE CALLOWAY,**
Appellee.

No. 4D12-3337

[January 6, 2016]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 08-21770CACE.

Benjamine Reid and Cristina Alonso of Carlton Fields Jorden Burt, P.A., Miami, and Gregory G. Katsas and Charles R.A. Morse of Jones Day, Washington, D.C. for appellant, R.J. Reynolds Tobacco Company.

Makai Fisher of Shook, Hardy & Bacon, L.L.P., San Francisco, California, Geri E. Howell of Shook, Hardy & Bacon, L.L.P., Miami, and Geoffrey J. Michael of Arnold & Porter LLP, Washington, D.C. for appellant, Philip Morris USA Inc.

Elliot H. Scherker and Julissa Rodriguez of Greenberg Traurig, P.A., Miami, for appellant, Lorillard Tobacco Company.

Karen H. Curtis of Clarke Silverglate, P.A., Miami, and Kelly Anne Luther and Ann M. St. Peter-Griffith of Kasowitz, Benson, Torres & Friedman LLP, Miami, for appellant, Liggett Group LLC.

Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, Scott P. Schlesinger, Jonathan Gdanski and Steven J. Hammer of Schlesinger Law Offices, P.A., Fort Lauderdale, John S. Mills and Courtney Brewer of The Mills Firm, P.A., Tallahassee, and David J. Sales, Jupiter, for appellee.

Richard B. Rosenthal of The Law Offices of Richard B. Rosenthal, P.A.,

Miami, for Amicus Curiae, The Engle Plaintiffs.

MAY, J.

Tobacco defendants, R.J. Reynolds Tobacco Company ("RJ Reynolds"), Philip Morris USA Inc. ("Philip Morris"), Lorillard Tobacco Company ("Lorillard"),[1] and Liggett Group LLC ("Liggett"), appeal a multi-million dollar final judgment. They raise several issues common to all and some individually.

They jointly argue the trial court erred in denying their motions for new trial based upon the repeated inflammatory arguments of plaintiff's counsel. They jointly argue the court erred in instructing the jury on the fraud-based claims. They jointly argue the compensatory and punitive damage awards must be either reduced or set aside for various reasons. They jointly argue the court erred in entering the final judgment jointly and severally after the jury found Johnnie Calloway ("decedent") to be at fault. Lastly, they argue the use of the *Engle*[2] findings violated due process.

Liggett argues it, Philip Morris, and Lorillard are entitled to a credit against the punitive damage award.

The plaintiff cross-appeals, arguing the trial court erred in sustaining certain defense objections concerning plaintiff's counsel's arguments.

We reverse the final judgment in part and remand the case for a new trial on the conspiracy and concealment counts, and on the entitlement to and amount of punitive damages. We find no merit in the other issues raised on direct appeal and cross-appeal.

The second amended complaint alleged counts against the defendants for strict liability, negligence, fraudulent concealment, and conspiracy to commit fraud by concealment. The plaintiff sought apportionment of fault between the decedent and the defendants and among the defendants for the negligence-based claims. The plaintiff also sought apportionment of damages among the survivors and the estate.

---

[1] As the result of a corporate merger, RJ Reynolds became the successor-by-merger to Lorillard. On November 16, 2015, this Court granted RJ Reynolds' motion to substitute in place of Lorillard and Lorillard's counsel's motion to withdraw.

[2] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

The trial court granted the defendants' motion to trifurcate the trial.

- Phase I determined whether the plaintiff was an *Engle* class member.

- Phase II determined causation, comparative fault, compensatory damages, and entitlement to punitive damages.

- Phase III determined the amount of punitive damages.

Testimony revealed the decedent started smoking at fifteen, eventually smoking up to three packs per day. Expert testimony established that "nicotine addiction is a huge barrier to people having a free choice whether to smoke" and most people continue to smoke because they are addicted, not because they want to.

The plaintiff's expert testified that during the decedent's childhood, tobacco companies spent billions of dollars to give the impression smoking was okay. Tobacco companies used the Tobacco Institute, and the Tobacco Industry Research Committee to accomplish this. The plaintiff used video clips and testimony to show how the tobacco companies spun the health concerns over cigarettes.

The decedent's brother testified about the decedent's exposure to the tobacco companies' messages. They saw ads claiming more doctors smoked Camels, which led them to think "if it's good enough for the doctors, it should be good enough for everybody."

In September 1991, the decedent suffered a heart attack and was hospitalized for several weeks. In May 1992, the decedent was diagnosed with bladder cancer. He returned home after chemotherapy, but was again hospitalized when he collapsed. He soon died of septic shock. A doctor connected the bladder cancer to his smoking and death. The decedent died just before his twentieth wedding anniversary when his daughter was around sixteen.

Throughout the trial, plaintiff's counsel made numerous statements that were objected to by defense counsel. The court sustained the objections, instructed the jury to disregard the comments, and denied the defense motions for mistrial.

The defendants moved for mistrial after closing and rebuttal, arguing the singular and cumulative effect of plaintiff's counsel's improper comments. They argued the comments were inflammatory, repeatedly

sustained, and were based on matters not in evidence. The court denied the motions for mistrial.

The court refused to use the defense proposed reliance instruction for the conspiracy and fraudulent concealment claims. The court instructed the jury—over a defense objection—that the comparative fault findings applied to only the non-intentional torts and the compensatory award would not be comparatively reduced if the jury found for the plaintiff on the intentional tort questions. The defendants argued this case was about negligent products liability. The plaintiff responded that it was an intentional tort case based upon fraudulent concealment.

In Phase I, the jury found the plaintiff was a member of the *Engle* class. In Phase II, the jury found that, both before and after the trigger date for the statute of repose, the defendants' individual fraudulent concealment and conspiracy to commit fraudulent concealment were all legal causes of the decedent's death. It awarded nine million dollars in non-economic damages to the plaintiff and seven million one hundred thousand dollars to the decedent's daughter.[3] It also found the plaintiff was entitled to punitive damages. And, it apportioned the following liability among the parties:

| Parties | % of Fault |
|---|---|
| Decedent | 20.5% |
| Philip Morris | 25% |
| RJ Reynolds | 27% |
| Lorillard | 18% |
| Liggett | 9.5% |

The court entered final judgment for compensatory damages against the defendants jointly and severally. In Phase III, the jury assessed the following punitive damages:

| Defendant | Punitive Damages |
|---|---|
| Philip Morris | $17.4 million |
| RJ Reynolds | $17.25 million |

[3] The trial court struck the plaintiff's and daughter's combined four million four hundred thousand dollar support and services awards.

4

| | |
|---|---|
| Lorillard | $12.6 million |
| Liggett | $7.6 million |

All the defendants moved for a new trial based upon plaintiff's counsel's inflammatory statements during Phase II. They claimed error in the jury instructions, and requested a reduction in compensatory damages. The court denied the motions. Philip Morris, Lorillard, and Liggett moved to strike the punitive damage awards based on a partial settlement agreement reached with the *Engle* class. The court denied the motions.

Liggett moved for a judgment notwithstanding the verdict, a new trial, and remittitur, arguing that plaintiff's counsel made inflammatory remarks during Phase III, and introduced financial evidence regarding Liggett that was outside the record. It also argued the punitive and compensatory damage awards were excessive. The court denied the motions. The defendants filed their notice of appeal and the plaintiff cross-appealed.

We address three issues in this opinion: (1) plaintiff's counsel's comments; (2) the jury instructions; and (3) the application of comparative negligence.

With regard to the comments made by plaintiff's counsel, suffice it to say that he pushed the envelope at every turn. The comments included an attack on defense witnesses, golden rule arguments, and an argumentative opening statement. The trial court diligently sustained objections, instructed the jury to disregard them; and denied numerous motions for mistrial. The problem was the constant need to have the trial court rule on these objections, forcing the court to fix the damage by instructing the jury to disregard the improper comments. We do not find error in the court's rulings, but we call counsel's attention to the numerous, unnecessary, and improper remarks. They injected potential error at every turn, and nearly caused us to reverse the judgment. They are the subject of Judge Klingensmith's dissent.

The defendants argue the court's refusal to instruct the jury on the detrimental reliance element of the fraud-based claims warrants a new trial on those claims. The plaintiff responds that the court's instruction sufficiently covered the reliance element and the defendants' proposed instruction misstated the law. We disagree with the plaintiff and reverse the judgment on the fraud-based claims.

Here, the defendants requested a reliance instruction because it was an essential element of the fraudulent concealment and conspiracy to commit fraudulent concealment claims. *R.J. Reynolds Tobacco Co. v. Buonomo*, 138 So. 3d 1049, 1051 (Fla. 4th DCA 2013); *Philip Morris USA, Inc. v. Kayton,* 104 So. 3d 1145, 1150–51 (Fla. 4th DCA 2012). Their defense was that the decedent did not detrimentally rely on any concealed information. The proposed detrimental reliance instruction read:

> A Defendant cannot be held liable for fraudulent concealment for failing to make any statements to [the decedent] regarding the potential health effects of smoking cigarettes, the potentially addictive nature of smoking cigarettes, or any other issue. A Defendant can only be held liable for fraudulent concealment if you find that the Defendant made a statement that was misleading to [the decedent] because it concealed or omitted a material fact not otherwise known or available regarding the potential health effects of smoking cigarettes and/or the potentially addictive nature of smoking cigarettes.

> A material fact is one that is of such importance that [the decedent] would not have acted as he did but for the concealment or omission of that fact.

> The concealment or omission of a material fact is a legal cause of death if it directly and in natural and continuous sequence produces or contributes substantially to producing such death, so that it can reasonably be said that, but for the concealment or omission of a material fact, the death would not have occurred. This means that Plaintiff must prove, for each Defendant, that but for [the decedent's] reliance on a statement by that Defendant concealing or omitting a material fact not otherwise known or available, [the decedent] would have acted differently and avoided his death from a smoking-related disease. [The decedent] cannot be found to have reasonably relied on a statement if he knew it was false or its falsity was obvious to him, or if the fact allegedly concealed was already known to him.

The court stated that "there has to be some element of reliance," but denied the requested jury instruction because it might have confused the jury. The court then instructed the jury, in part:

6

> The issue for your determination on plaintiff's concealment claim as to each defendant is whether the concealment of the defendants was a legal cause of [the decedent's] death.
>
> Concealment is a legal cause of death if it directly and in natural and continuous sequence produces or contributes substantially to producing such death, so that it can reasonably be said that, but for the concealment, the death would not have occurred.

Noticeably absent from the instruction given is the element of detrimental reliance.

A trial court abuses its discretion when it fails to give a proposed instruction that accurately states the law, is supported by the facts, and is necessary for the jury's proper resolution of the issue, so long as the substance is not covered by another instruction and the failure to instruct is prejudicial. *R.J. Reynolds Tobacco Co. v. Jewett*, 106 So. 3d 465, 467 (Fla. 1st DCA 2012) (citations omitted).

*Engle* reiterated the elements to be proven for fraudulent concealment and conspiracy to commit fraudulent concealment claims. The "plaintiff still must prove detrimental reliance upon the [defendant's] misinformation." *Buonomo*, 138 So. 3d at 1051.

> Florida law imposes a reliance requirement in an omissions case, which cannot be satisfied by assumptions. Florida law also requires a party asserting fraud to establish that but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction. If a plaintiff claims to be misled, but cannot demonstrate a causal connection between the defendant's conduct and the plaintiff's misapprehension, the plaintiff cannot recover.

*Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999) (internal citations omitted).

Florida's written opinions have consistently included detrimental reliance as an element in fraudulent concealment instructions. *See, e.g.*, *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1065–66, 1068 (Fla. 1st DCA 2010) (stating that the trial court instructed the jury on reliance and that "detrimental reliance on misinformation" is an element of fraudulent concealment). "*Engle*-progeny plaintiffs must certainly prove detrimental reliance in order to prevail on their fraudulent concealment

claims." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 698 (Fla. 2015). Reliance is an element of fraudulent concealment, which needs to be proven separate from causation. *Kayton*, 104 So. 3d at 1150–51; *see Engle*, 945 So. 2d at 1255.

"[I]n a post-*Engle* case, a plaintiff alleging fraudulent concealment need only prove that he or she detrimentally *relied* upon the defendant tobacco corporation's misinformation." *Kayton*, 104 So. 3d at 1150 (emphasis added). "Similarly, a plaintiff claiming conspiracy to commit fraudulent concealment in an *Engle* progeny case need only prove that he or she detrimentally *relied* upon deceptive statements made by a member of the conspiracy." *Id.* (emphasis added).

The detrimental reliance element was not covered by the instructions given; its omission prejudiced the tobacco companies' defense. The instructions were insufficient for the jury's consideration of the fraudulent concealment and conspiracy to commit fraudulent concealment claims. We must therefore reverse the judgment as to these two claims, and remand the case for a new trial on these claims.

Because we reverse the judgment on the two claims that serve as the basis for the imposition of punitive damages, we must also reverse the punitive damages award. *See R.J. Reynolds Tobacco Co. v. Ciccone*, 123 So. 3d 604, 616–17 (Fla. 4th DCA 2013). We remand the case for a new trial on the entitlement to, and amount of, punitive damages.

We next address whether the court erred in failing to reduce the compensatory damage award based on the jury's finding that the decedent was 20.5% comparatively negligent.

The defendants argue that because all the claims were based upon a products liability theory, the court should have reduced the awards by the percentage of the decedent's comparative negligence. The plaintiff responds that the decedent's comparative negligence does not apply to intentional torts, even when joined with negligence claims.

In *R.J. Reynolds Tobacco Co. v. Schoeff*, 40 Fla. L. Weekly D2477 (Fla. 4th DCA Nov. 4, 2015), we recently held that a de novo standard applies to this issue. Applying that standard, we held that whether conduct in the context of a tobacco action is considered negligent or intentional, comparative negligence applies. *See Schoeff*, 40 Fla. L. Weekly at D2480.

Sections 768.81(2) and (4), Florida Statutes (1992),[4] provide, in part, that in "negligence cases," the claimant's contributory fault "diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault," however, it does not prevent recovery. § 768.81(2), (4), Fla. Stat. The term "negligence cases" "includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories." *Id.* § 768.81(4)(a).

In deciding whether a case constitutes a "negligence case," courts must examine "the substance of the action and not the conclusory terms used by the parties." *Id.* If the action is based upon an intentional tort, compensatory damages cannot be reduced by the plaintiff's contributory fault. *Id.* § 768.81(4)(b).

> Here, the trial court remarked:
>
> If the judgment were solely being entered based on the Plaintiff's strict liability and negligence claims, the non-economic damages would be reduced based on the jury's comparative fault findings. But because the Plaintiff also prevailed on her intentional tort claims, she is entitled to recover her full non-economic damages without regard to comparative fault as the jury was advised.

The trial court failed, however, to look to the substance of the action to determine if the claims were grounded in negligence as required by section 768.81(4)(a). Under *Schoeff*, this case is based upon conduct grounded in negligence. While the trial court did not have the benefit of *Schoeff* when it ruled on the issue, *Schoeff* now requires application of comparative negligence to the plaintiff's fraud-based claims. *Schoeff*, 40 Fla. L. Weekly at D2480.

As we have reversed the fraud-based claims, comparative negligence must be applied to the remaining negligence claims. If upon remand, the plaintiff chooses to retry the intentional tort claims, under *Schoeff*, the decedent's comparative fault should be applied to the intentional tort claims as well. *See id.*

---

[4] Both parties agree that the 1992 version is applicable here. *See, e.g.*, *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 n.9 (Fla. 2003).

For the reasons expressed in this opinion, we reverse the judgment based on the fraudulent concealment and conspiracy to commit fraudulent concealment claims. We reverse the punitive damages award. We remand for a new trial on these issues. Alternatively, should the plaintiff choose not to proceed with a new trial, then the trial court should apply the decedent's comparative negligence and apportion the compensatory damages accordingly.

TAYLOR, J., concurs specially with opinion.
KLINGENSMITH, J., dissents with opinion.

TAYLOR, J., concurring specially.

I concur in the majority's decision affirming the trial court's denial of appellants' motion for a new trial based on their claims of improper argument. Trial courts have broad discretion in ruling on motions for mistrial or new trial based on claims of improper argument. *Philippon v. Screffler*, 33 So. 3d 704, 709 (Fla. 4th DCA 2010), *called into doubt on other grounds by Allstate Ins. Co. v. Marotta*, 125 So. 3d 956 (Fla. 4th DCA 2013). In this nearly two-month trial, given the circumstances and evidence in the case, these comments were not so prejudicial and inflammatory as to deprive defendants of a fair trial. In virtually every *Engle* progeny trial, the jury is required to consider whether the defendants' conduct warrants punitive damages. Whether it is appropriate in any case to impose punitive damages concerns the reprehensibility of the defendant's conduct, which in turn involves consideration of whether the defendant recognizes that its conduct was wrongful. *See, e.g., BMW, Inc. v. Gore*, 517 U.S. 559 (1996).

Based on our court's recent decision in *R.J. Reynolds Tobacco Co. v. Schoeff*, 40 Fla. L. Weekly D2477 (Fla. 4th DCA Nov. 4, 2015), I agree that we must reverse the trial court's failure to reduce the compensatory damage award based on the jury's finding that the decedent was 20.5% comparatively negligent. However, as I stated in my dissent in *Schoeff*, I do not agree that these tobacco lawsuits are based on conduct grounded in negligence. The "core" of *Engle* progeny cases is intentional misconduct. *R.J. Reynolds Tobacco Co. v. Sury*, 118 So. 3d 849, 852 (Fla. 1st DCA 2013). Even though strict liability and negligence claims are included in the complaint, the lawsuit essentially alleges intentional misconduct: that the tobacco company intentionally designed its products in a defective manner and pursued a callous and intentional course of tortious conduct by fraudulent concealment. I would therefore not apply comparative negligence to the compensatory damage awards in this case, nor, on

10

retrial, apply comparative negligence to jury awards for any fraud-based claims

KLINGENSMITH, J., dissenting.

I dissent from the majority decision. In doing so, I wish to expound on a problematic issue which was touched upon briefly in the opinion. That issue involves the comments and argument of plaintiff's counsel, and whether they were so improper that their cumulative effect during the Phase II proceedings was such that the jury verdict was unduly based upon passion and prejudice. I believe that it was.

I have no desire to drastically lengthen this opinion by commenting on each and every one of the improper remarks that counsel made to the jury. Suffice it to say there were many. Some were met with an objection by opposing counsel, while many others were not. The court repeatedly instructed the jury to disregard plaintiff's counsel's comments, while at other times the comments provoked motions for mistrial after the court sustained the objection.

The tobacco defendants argued for a new trial based on the singular and cumulative effect of plaintiff's counsel's improper comments on the basis that they were numerous, inflammatory, repeatedly sustained, and injected matters not in evidence. The court denied each and every motion for mistrial made throughout the trial. I will address only a few of the more egregious remarks that occurred during the Phase II proceedings.

Over the course of plaintiff's counsel's thirty-three page opening at the start of Phase II, the court sustained fourteen separate defense objections to counsel's argumentative comments that included the following:

- "That's what this case is about: Money. Billions of dollars. You're going to hear how much money these companies make every day."

- Commenting that tobacco industry executives went on TV with a cigarette in their hand and said, "If we find anything harmful, we'll remove it." Plaintiff's counsel then commented, "They knew back in 1953. That's disgraceful. That's a disgraceful way to run a company."

- "That's what these companies do. That's shameful."

- "That kind of conduct . . . should not be accepted."

11

- Plaintiff's counsel stated that the tobacco defendants said after *Engle*, "Smoking is addictive and it does cause cancer. You got us. Sorry." He then stated, "Guess what? They should have to apologize, but they won't."

- "Their conduct should not be tolerated."

- "[Y]ou are going to learn a lot about this cigarette industry. Things that will shock and appall you."

During the Phase II closing and rebuttal, plaintiff's counsel made several other improper comments attacking defense counsel and the tobacco companies' alleged failure to accept responsibility. Some examples where the court sustained objections included:

- "[W]e're also going to ask you to consider punitive damages against these defendants, because what they did should not be tolerated. What they did for over 50 years should not be tolerated. And, really, what they did in this courtroom over these last five, six weeks shouldn't be–."

- "This conduct was reprehensible. That's the concept we're talking about. Reprehensible conduct. There's two phases– there's three phases to this trial. These people never give up."

- "They won't even take the responsibility to say, you know what? These findings are the law and we accept it. They won't even do that."

- "[The plaintiff] acknowledged that acceptance of responsibility; and yet the tobacco companies come in here and don't accept any for their behavior over the past 50-plus years. There's something wrong with that."

- Plaintiff's counsel discussed the trial phases and said, "And so far not a single solitary human being on this side has said: I accept some responsibility. Not an iota of it, not a percentage point, nothing."

We have recently held that, "[i]t is improper for counsel to suggest in closing argument that a 'defendant should be punished for contesting damages at trial' or that defending a 'claim in court' is improper." *Allstate Ins. Co. v. Marotta*, 125 So. 3d 956, 960 (Fla. 4th DCA 2013) (citation

12

omitted).  We addressed similar comments disparaging defendants for failing to take responsibility in cases such as *Philip Morris USA, Inc. v. Tullo*, 121 So. 3d 595, 598 (Fla. 4th DCA 2013), and *Intramed, Inc. v. Guider*, 93 So. 3d 503, 507 (Fla. 4th DCA 2012), and found them to be improper as well.

In *Tullo*, plaintiff's counsel made numerous comments at trial about the defendant's failure to accept responsibility, including other comments such as comparing the defendants' behavior to that of heroin dealers.  121 So. 3d at 598.  Unlike the instant case, the defendants in *Tullo* did not contemporaneously object to these comments.  *Id.*  We concluded that the comments were improper and stated:

> The comments referring to the Tobacco Companies' failure to take responsibility for their actions fall under the umbrella of our recent opinions in [*Marotta*, 125 So. 3d at 958–59], and [*Intramed*, 93 So. 3d at 507], wherein we held that it is improper for a plaintiff's counsel to disparage the defendant for defending itself and for failing to take responsibility for its actions.

*Id.* at 601.

Nevertheless, we affirmed the judgment against the tobacco companies because defense counsel failed to object and preserve the errors for appellate review, and the comments did not constitute fundamental error under the four-part test established by the Florida Supreme Court in *Murphy v. International Robotic Systems, Inc.*, 766 So. 2d 1010 (Fla. 2000).  *Id.* at 601–02.

Here, defense counsel did object to the comments, making this case more analogous to *Marotta* and *Intramed*.  In *Marotta*, we reversed the final judgment rendered based on similar improper comments made by counsel in closing argument, which occurred in combination with an improper cross-examination of a witness.  125 So. 3d at 962.  In *Intramed*, we also reversed the final judgment and remanded for a new trial on damages based on such disparaging comments.  93 So. 3d at 507.  There is no logical distinction that can be drawn between those cases and plaintiff's counsel's arguments in this case.

This court has applied *Intramed* and found such comments to be sufficiently egregious to warrant a new trial.  *See Hill v. New Horizons of the Treasure Coast, Inc.*, 151 So. 3d 47, 48 (Fla. 4th DCA 2014).  Although plaintiff asserts that the punitive damages claim made these comments

13

appropriate because the issue of entitlement to such damages was at issue in Phase II, so too was the claim for compensatory damages. *Intramed*, 93 So. 3d at 507 ("The purpose of damages here was to compensate, not to make the defendant care, 'take responsibility,' or say it was sorry."). Despite plaintiff's assertion to the contrary, an argument that the jury should punish a defendant for defending itself or failing to admit responsibility is well outside the bounds of proper advocacy.

A party may not give a closing argument, as plaintiffs did in this case, that is "designed to inflame the emotions of the jury rather than prompt a 'logical analysis of the evidence in light of the applicable law.'" *Id.* (quoting *Murphy*, 766 So. 2d at 1028). Examples of comments made in this trial, all of which had objections sustained, include:

- "[The Tobacco Companies] never give up. There are no corporate representatives here." "There are no corporate representatives here. There are lawyers here."

- "If you want to be treated like a person, act like a person. Behave like a person."

- "[T]he fact of those things . . . is that intentional wrongful conduct, the recklessness towards human life, the indifference towards human life. That which though, not criminal, virtually is criminal. And if you kill somebody for money . . . that's criminal."

- "If you exchange a human life and make a decision – you know, back in the day they had that big case about the Ford Pinto and it caught fire."

- "They are addicted to money, not by the hundreds of dollars or the thousands of dollars, or the millions, but the billions. Do you know how much power that industry has?"

Some of the arguments referenced above are also objectionable because they "suggest[] [a party] is doing something wrong by . . . not showing proper sympathy or empathy." *City of Orlando v. Piniero*, 66 So. 3d 1064, 1073 n.10 (Fla. 5th DCA 2011). Comments referencing the absence of corporate representatives at trial unfairly implied that the appellants were not showing proper respect for the trial, the decedent, and the plaintiff.

Plaintiff's counsel also chose to inject himself into the case with various gratuitous remarks during closing argument:

14

- "Everything you want to know about the damages in this case . . . [the daughter] told you. You know, I was sitting over there and I was bawling, I don't know why."

- "I have a daughter the same age. I will be 59, I have a 17-year-old. Same age."

These comments were designed for no other purpose than to inappropriately evoke sympathy from the jury. *See Cascanet v. Allen*, 83 So. 3d 759, 764 (Fla. 5th DCA 2011) ("[C]ourts have consistently prohibited a party from currying sympathy from the jury for a favorable verdict and asking a jury to consider the economic status of either party . . . ."); *see also Russell, Inc. v. Trento*, 445 So. 2d 390, 392 (Fla. 3d DCA 1984) ("Remarks made solely for the purpose of evoking sympathy for the plaintiff and of such a character that neither rebuke nor retraction will destroy their prejudicial, sinister influence warrant a new trial.").

Plaintiff argues that the comments, taken as a whole, should not be considered harmful under the second prong of the *Murphy* test, as we held in *Tullo*. However, the Florida Supreme Court has changed the "harmless error" analysis since the *Tullo* decision issued. Specifically, the court announced that now "the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is *no reasonable possibility* that the error contributed to the verdict." *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1256 (Fla. 2014) (emphasis added).

The court explained that this "no reasonable possibility test" properly places the burden on the party who invited the error. *See id.* at 1257–61 (concluding that the trial court erred by sustaining defendants' objection and prohibiting plaintiff from asking certain questions of an expert witness on cross-examination, and that under the new test the error was not harmless). As Justice Lewis noted, "[p]lacing the burden on the party that introduced the error serves not only to penalize the offending party, but also discourages future efforts to introduce error into proceedings." *Id.* at 1272 (Lewis, J., concurring in part, dissenting in part).

"[I]n evaluating whether the errors were harmless, we may consider 'the cumulative effect' of preserved and unpreserved error." *Marotta*, 125 So. 3d at 961 (citation omitted). Here, the plaintiff clearly invited the many errors complained of, and now has the burden of proving that there was no reasonable possibility the comments could have affected the outcome. *Special*, 160 So. 3d at 1256. The plaintiff did not meet that burden, and

15

the majority does not and cannot provide persuasive support for their conclusion that it did.

Confronted with the task of ruling on these improper comments, the majority correctly concludes that the trial court timely and properly sustained defense counsel's objections, though it denied the numerous motions for mistrial. Of note, however, is the fact that the record reflects no significant admonishment of any kind was delivered by the court, even after plaintiff's counsel chose to continue with similar improper comments when the defendants' objections had been sustained. The defense's repeated objections, many of which were sustained, should have been sufficient to alert the court to the impermissible nature of these comments. Advising counsel to simply "move on" to another line of questioning was wholly inadequate. As a result, the prejudicial effect of these comments was compounded by the trial court's failure to attempt any real intervention to curb them. The following exchange illustrates this point:

> Plaintiff's Counsel: "In one way or the other, whatever your faith, whatever your religion is, everyone knows that amongst Adam and Eve and the serpent, the serpent is blame ridden. And that's one of the questions you need to ask. In the temptation of the fruit of these nicotine-laced drug delivery devices–"
>
> Defense Counsel: Objection.
>
> Court: Sustained[.]

Plaintiff's counsel nonetheless continued:

> Plaintiff's Counsel: "[I]s the cigarette industry blameless?"
>
> Defense Counsel: Objection.
>
> Plaintiff's Counsel: "Is the serpent blameless?"
>
> Defense Counsel: Objection.
>
> Court: Sustained. Counsel I sustained that analogy, so move on.

The connotation of this analogy was that the tobacco companies are the "serpent" (*i.e.,* the devil), and are blameworthy even though the decedent chose to begin smoking—just as Eve also chose to eat the forbidden fruit.

16

The court clearly sustained the objection to the use of this analogy, yet plaintiff's counsel nonetheless continued with it. Moreover, defense counsel had made an earlier objection regarding the improper nature of this argument during voir dire, and the court sustained that objection. Plaintiff's counsel disregarded that ruling by using the analogy once again in his Phase II closing—all without any meaningful admonition from the trial court against engaging in this conduct.

A trial judge retains the ultimate responsibility to ensure proper behavior of trial counsel and fair trial proceedings in his or her courtroom. To quote the Third District, "it is no longer—if it ever was—acceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing . . . ." *Borden, Inc. v. Young*, 479 So. 2d 850, 851 (Fla. 3d DCA 1985). Here the trial court's duty was clear—to respond to such behavior by curbing multiple instances of improper argument and ensuring that the jury was not being led astray by repeated objectionable comments. A trial judge should respond to such improper argument in a timely and consistent manner, and issue proportional rebukes when repeated instances occur.

This is especially true in lengthy, high-stakes cases where a trial court's failure to control the litigants not only deprives the parties of a fair trial, but can ultimately result in scarce judicial resources being consumed when the case is remanded for re-trial based on those actions. As this court has previously stated, the task is not so difficult that trial judges are unable to understand when they should exercise this authority:

> It is the trial court's responsibility, when objections are made to improper argument, to sustain the objections and let counsel know that these tactics will not be tolerated. Since the basic parameters of proper argument are the issues reflected in the pleadings; the facts shown by the evidence and the inferences to be drawn therefrom; and the instructions given to the jury, with some latitude for rhetoric, it should not be difficult for trial judges to recognize when counsel are exceeding the bounds of propriety.

*Bellsouth Human Res. Admin., Inc. v. Colatarci*, 641 So. 2d 427, 430 (Fla. 4th DCA 1994) (footnote omitted).

As the Third District has recognized:

> When objections are sustained and the trial court considers it proper to admonish counsel, it should be done outside the

17

jury's presence. However, if counsel continues to engage in improper comments and arguments, the trial judge should admonish counsel and advise them that future improper tactics will cause counsel to be rebuked before the jury. This has a magical effect! Trial counsel realize that for the impartial judge to rebuke him or her in the jury's presence can seriously undermine their rapport with a jury.

*Gomez v. State,* 751 So. 2d 630, 633 (Fla. 3d DCA 1999).

These cases make clear that a timely and appropriate admonition of counsel avoids the possibility that the offending conduct will continue, and hopefully forestalls the accumulation of prejudice that occurs when such repeated improprieties are not effectively addressed. Regrettably, the trial court did not adequately perform its duty to prevent the conduct described herein. As one of the aforementioned examples from this case indicates, after the court *sustained fourteen objections over the course of a mere thirty-three pages of trial transcript,* the court took no further action. Apart from the deleterious effects that judicial inaction may cause in any given case, the failure of our trial courts to effectively deal with such conduct can in a broader sense only lead to emulation by other attorneys. Dismissing such occurrences as mere "harmless error" encourages "Rambo" litigators, intent on engaging in no-holds-barred tactics at trial, to roll the dice in the appellate courts. If that occurs, the entire judicial system suffers.

The number of improper comments and arguments in this case is extremely troubling, and leads to the inescapable conclusion that they were part of plaintiff's counsel's overall trial strategy. These comments were neither isolated nor incidental. When considered in the aggregate it is obvious they created a negative synergistic effect, exacerbating the degree of unfairness to the defendants.

To summarize, the plaintiff's opening statement was overly argumentative and included comments chastising the tobacco companies for their failure to apologize. Their closing argument included inflammatory remarks; statements evoking sympathy from the jury; inappropriate religious references; comments about the defendants not taking responsibility; attacks for electing to defend the case; and insinuations regarding the failure of the defendants' corporate representatives to attend the trial. Taking into account all of the preserved objections to the improper comments in plaintiff's counsel's opening and closing as referenced above, the cumulative impact of these errors created an atmosphere of "win at all costs."

In *Tullo*, we sent a gentle message to lawyers pertaining to how future cases should be handled, and cautioned counsel to "be vigilant in crafting closing arguments that fall within the confines of permissibility." 121 So. 3d at 602. Unfortunately, we have seen many recent cases where this warning was either misunderstood or simply ignored. In this dissenting opinion, I hope to make that warning clearer. Attorneys who engage in such tactics in the future do so at their own peril, and the peril of their clients, by risking the reversal of their cases on appeal.

To hold, as the majority does, that these comments and arguments amount to "harmless errors" ignores the body of case law from this court holding otherwise. Therefore, I believe that a new trial is required in this case on both the Phase II and Phase III claims.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***