DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY** and **PHILIP MORRIS USA, INC.**,
Appellants,

v.

**RICHARD MAHFUZ**,
Appellee.

No. 4D19-2236

[June 30, 2021]

Appeal and cross appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Sandra Perlman, Judge; L.T. Case No. CACE 07-036743.

Val Leppert and William L. Durham II, of King & Spalding LLP, Atlanta, Georgia, for appellant R.J. Reynolds Tobacco Company.

Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, D.C., and Jennifer M. Voss of Shook, Hardy & Bacon L.L.P., Tampa, for appellant Philip Morris USA Inc.

Shea T. Moxon and Celene H. Humphries of Brannock Humphries & Berman, Tampa, and Scott Schlesinger, Steven Hammer, Jonathan R. Gdanski and Brittany C. Barron of Schlesinger Law Offices, P.A., Fort Lauderdale, for appellee.

KUNTZ, J.

R.J. Reynolds Tobacco Co. and Philip Morris USA, Inc. appeal the circuit court's final judgment for Richard Mahfuz, as Personal Representative of the Estate of Rita Mahfuz. Mahfuz filed a conditional cross-appeal. We address one of the issues raised by the parties. We agree with the Tobacco Companies that statements Mahfuz's counsel made during closing argument require reversal. Accordingly, resolution of the remaining issues on appeal and cross-appeal is unnecessary.

The Tobacco Companies challenge multiple comments made by Mahfuz's counsel. Some of the comments we do not specifically address because we either do not find them to be reversible error or, in other

instances, the Tobacco Companies failed to contemporaneously object to the comments.

Other comments were predicted and the subject of a pretrial motion in limine and an objection at trial. For example, Mahfuz's counsel called Philip Morris a "soulless enterprise of death." The court overruled the Tobacco Companies' objection. But that comment was intended to achieve the same result as the comment we disapproved of in *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753, 761 (Fla. 4th DCA 2016). In that case, plaintiff's counsel noted "the recklessness towards human life, the indifference towards human life. That which though, not criminal, virtually is criminal. And if you kill somebody for money . . . that's criminal." *Id.* Here, describing the Tobacco Companies as a "soulless enterprise of death" was done to inflame the jury.

Later during closing argument, counsel for Mahfuz read from George Orwell's novel *1984*. Mahfuz's counsel compared the Tobacco Companies to Big Brother as the "totalitarian state" that "can monitor everybody." Mahfuz's counsel described Mahfuz as "the good guy . . . trying to overcome Big Brother." Mahfuz's counsel read a passage from the novel to the jury:

> And above all, we do not allow the dead to rise up against us. You must stop imagining that posterity will vindicate you, Winston. Posterity will never hear you. You'll be lifted clean out of the stream of history. We shall turn you into a gas and pour you into the stratosphere. Nothing will remain of you, not a name in a register, not a memory in a living brain. You will have been annihilated in the past as well as in the future. You will have never existed.

After reading the passage, Mahfuz's counsel concluded that "through this process, through your verdict, we ask you to please ensure that Rita Mahfuz, their victim, is remembered; she's not forgotten."

We agree with the Tobacco Companies that Mahfuz's counsel presented this *1984* passage to equate the Tobacco Companies with Big Brother, and that the jury needed to save the decedent's memory with a large verdict. But the passage had no connection to the evidence. We recently addressed the same issue—the identical passage read—by the same attorney, and concluded it was improper. *R.J. Reynolds Tobacco Co. v. Kaplan*, No. 4D18-2880 (Fla. 4th DCA June 23, 2021) (on rehearing). In *Kaplan*, after reading from *1984*, counsel concluded that the jury should "make this right" during deliberations. *Kaplan*, slip op. at *6. Here, Mahfuz's counsel

2

asked the jury to ensure through a verdict that the decedent is not forgotten. For the reasons we stated in *Kaplan,* the comments here were improper.

There were other improper comments too.[1] Mahfuz's counsel also compared the Tobacco Companies to Oscar Wilde's Dorian Gray. Counsel stated that "Oscar Wilde was an author. . . writing about this period of time in Victorian England and this character, Dorian Gray." He told the jury that "Dorian Gray in the book is a playboy in Victorian England . . . [He] has this mirror, and when he looks in the mirror, he sees things for what they really are, right. He sees them for what they really are. He sees that he's rotten. He's able to see inside his own self, and he sees that he's rotten." He asked that the jury see the Tobacco Companies in the same light. He said that "we ask that you see this industry for what they really are, right, because they are rotten inside."

The Tobacco Companies objected to the comments but the circuit court overruled the objections. After the court overruled the objection, Mahfuz's counsel again stated that the Tobacco Companies are "rotten to the core."[2] As with the other comments discussed above, the comments had no purpose but to inflame the jury.[3]

Later, Mahfuz's counsel told the jury not to "lose sight" of "the evil that men do." He continued by stating that "[t]he conduct of these individuals lives on . . . Horrors leave shadows, especially carcinogenic horrors."[4] Later, counsel told the jury that the punishment of the verdict has to hurt. He stated that "[y]ou can't plunge the spear all the way straight through their heart. They have to feel it though." But on this comment, the court sustained the Tobacco Companies' objection.[5]

---

[1] Mahfuz's counsel made improper comments during Phase I and Phase II closing argument.

[2] The Tobacco Companies again objected, and the court overruled the objection.

[3] We do not hold that every metaphor or literary reference is improper. We simply hold that they were improper as used in this case.

[4] The Tobacco Companies objected to these comments. The court did not rule on the objection. The Tobacco Companies tried to obtain a ruling by specifically asking for a ruling on the objections before counsel continued. But the court merely stated that Mahfuz's counsel could move on.

[5] After the court sustained the objection, counsel for the Tobacco Companies asked to make a motion. The court told Mahfuz's counsel to continue without hearing the motion.

The comments by counsel during closing argument are similar to those made in *Kaplan*. *See also R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753 (Fla. 4th DCA 2016); *Cohen v. Philip Morris USA, Inc.*, 203 So. 3d 942 (Fla. 4th DCA 2016); *Philip Morris USA, Inc. v. Tullo*, 121 So. 3d 595 (Fla. 4th DCA 2013). They were improper in *Kaplan* and they are improper here.

However, we affirmed the judgment in *Kaplan* as "the verdict returned by the jury in each phase was far less than requested by Plaintiff's counsel." *Kaplan*, slip op. at *10. Unlike in *Kaplan*, in this case, Mahfuz's counsel intent to inflame the jury succeeded. Mahfuz's counsel requested $12 million in compensatory damages in Phase I plus funeral expenses, and the jury awarded compensatory damages of $12,005,500.00, which included funeral expenses. In Phase II, Mahfuz's counsel requested punitive damages of $15 million against each of the Tobacco Companies. The jury returned a punitive damages award of $15 million against Reynolds and $10 million against Philip Morris. Mahfuz received almost exactly what was requested.

We reverse the court's judgment against the Tobacco Companies and remand for a new trial. The remaining issues raised on appeal and cross-appeal are unnecessary because of our reversal of the judgment. So, we dismiss the rest of the appeal and the cross-appeal as moot.

*Reversed and remanded in part; dismissed as moot in part.*

ARTAU, J., concurs.
GROSS, J., concurs specially with opinion.

GROSS, J. specially concurring.

I concur with the majority's reversal of the judgment in this case because it is required by our body of closing argument case law that has emerged since *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753 (Fla. 2016) (en banc).

I write only to state my belief that our cases inappropriately deter metaphorical speech, which, as George Orwell has written, "assists thought by evoking a visual image." George Orwell, *Politics and the English Language*, 13 Horizon 76 (1946). In the *Engle* cases, this court has lost sight of the fact that the cases involve punitive damages and facts egregious enough to justify their imposition. Described as "quasi criminal," punitive damages

4

operate as "private fines" intended to punish the defendant and to deter future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation.

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). While I agree that certain themes are inappropriate in a closing argument, such as comparisons to Nazis or slavery, a plaintiff's attorney should be permitted to use vivid speech to describe the enormity of a wrong that justifies punitive damages. Our post-*Calloway* case law encourages "euphemism, question-begging and sheer cloudy vagueness" with imprecise words that "fall[] upon the facts like soft snow, blurring the outlines and covering up all the details." George Orwell, *Politics and the English Language*, 13 Horizon 76 (1946).

George Orwell would appreciate the irony of the majority's condemnation of the plaintiff's use of the novel *1984* in closing. Still, we are required to hold that the *1984* argument is improper under *R.J. Reynolds Tobacco Co. v. Kaplan*, 4D18-2880, 2021 WL 2559664 (Fla. 4th DCA June 23, 2021). This argument, when combined with the other improper comments in closing, requires us to reverse.

For what it is worth, I find the *1984* literary reference to be weak and convoluted, hardly the type of argument that would inflame the jurors and cause them to abandon all reason in returning a verdict. Our recent closing argument jurisprudence disrespects the common sense and intelligence of juries, which is the bedrock of the jury system. As Judge Learned Hand wrote almost a century ago, "[j]uries are not leaves swayed by every breath." *United States v. Garsson*, 291 F. 646, 649 (S.D.N.Y. 1923).

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***