CASANUEVA, Judge.
In these consolidated appeals, State Farm Mutual Automobile Insurance Co. and Daniel J. Thomas, combined, raise six claims of error. These are (1) that a defense expert witness, Dr. Steven Kneze-vich, was improperly limited as to the scope of his testimony; (2) that a different defense expert witness, Dr. Charles Bain, was wrongly precluded entirely from providing opinion testimony regarding the cause of plaintifffappellee Holli R. Thorne’s injuries; (3) that Mr. Thomas was erroneously precluded from recalling a third expert defense witness, Dr. Steven Tresser, called by other defendants, as his own witness; (4) that the trial court erred in disallowing into evidence the high-low agreement the plaintiff had with some of the defendants; (5) that the trial court abused its discretion in denying a mistrial or a new trial based on improper closing argument by plaintiff’s counsel; and (6) that the trial court erred in ordering State Farm to pay its policy limits over and above the full damage award, subjecting Mr. Thomas to the possibility of double liability should State Farm seek subrogation against him. Ms. Thorne essentially concedes the merit of the sixth issue, and we find no abuse of discretion in the trial court’s refusal to allow Mr. Thomas to recall Dr. Tresser as his own witness.[1] Accordingly, our discussion will focus on the remaining four issues. We reverse.
I. FACTS
In 2004, Ms. Thorne was a passenger in a vehicle that was rear-ended while it was stopped at a traffic light. In 2006, while driving her own car, she was again rear-ended while stopped at a traffic signal. After the 2006 accident, she underwent three shoulder surgeries, neck surgery, and knee surgery. Claiming injuries from either or both of these accidents, she instituted a tort action claiming damages against the defendants in the earlier incident (the “2004 defendants”),[2] against Mr. Thomas for the 2006 incident, and State *69 Farm as her underinsured insurance carrier.[3]
A.Dr. Steven Knezevich
During the course of its pretrial investigation, State Farm retained Dr. Steven Knezevich, a board-certified orthopedic surgeon, to review Ms. Thorne’s personal injury claims. Dr. Knezevich concluded that Ms. Thorne’s three shoulder surgeries and her knee surgery were unrelated to the 2006 accident involving Mr. Thomas. The parties were ordered to serve their respective witness and exhibit lists by October 29, 2010. After this date, State Farm served an amended -witness and exhibit list which identified for the first time Dr. Knezevich as an expert. Trial was scheduled to begin on January 24, 2011, sixty-nine days hence. State Farm’s witness list also included a summary of Dr. Knezevich’s expected testimony; he was also made available for deposition. And Ms. Thorne’s counsel deposed Dr. Kneze-vich prior to trial. At trial, Ms. Thorne’s counsel cited the late-filed disclosure of Dr. Knezevich to argue that his testimony should be disallowed in its entirety. Because Ms. Thorne had only recently had her third shoulder surgery, the trial court allowed Dr. Knezevich to opine on the need for that surgery but disallowed any opinion testimony from Dr. Knezevich relating to the prior two shoulder surgeries or the knee surgery.
B.Dr. Bain
State Farm hired expert witness Dr. Charles Bain, M.D., who also works as a biomedical engineer, to do a comprehensive analysis of the accident. He works for Biodynamic Research Corp. which researches crush data, the forces involved in vehicle accidents, and exemplar studies. Ms. Thorne claimed that her knee and neck injuries, necessitating past and future treatment and surgery, were caused by her face hitting the steering wheel and her knee hitting the dashboard when Mr. Thomas struck her from behind. She also claimed that she received these injuries despite wearing her seatbelt. Dr. Bain’s investigation resulted in his opinion that Ms. Thorne must not have been wearing a seatbelt because she would not have received these injuries if she had. At trial, Ms. Thorne’s counsel, based upon a Frye[4] challenge, successfully moved to preclude Dr. Bain from testifying as to his opinion about the cause of Ms. Thorne’s neck and knee injuries. Thus, State Farm and Mr. Thomas could provide no evidence on their affirmative defense that Ms. Thorne contributed to these injuries by not wearing her seatbelt.
C.The High-Low Agreement
Just before trial, Ms. Thorne and the 2004 defendants reached a “high-low” agreement. This agreement provided that these defendants would remain in the lawsuit and regardless of whatever amount for which the jury decided they were liable they would pay her a minimum of $100,000 and a maximum of $350,000. Upon discovering this fact, State Farm and Mr. Thom *70 as repeatedly requested leave to inform the jury of the agreement, likening it to a “Mary Carter” agreement.[5] “A ‘Mary Carter Agreement’ ... is basically a contract by which one co-defendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other co-defendants.” Dosdowrian v. Carsten, 624 So.2d 241, 243 (Fla.1993) (prospectively outlawing such agreements in Florida). The trial court denied these defendants such leave, and the jury was never informed of the 2004 defendants’ potential for reduced liability.
D. Denial of Mistrial Based On Plaintiffs Closing Argument
At trial, Ms. Thorne’s counsel in closing argument harped on the lack of defense evidence to dispute the link between the first two shoulder injuries and the knee injury with the 2006 accident. We set forth several passages to illustrate the nature of the argument. State Farm repeatedly objected, but the trial court overruled the objections as well as the final objection that the cumulative effect of these arguments merited a mistrial.
The Defendant Thomas and State Farm didn’t bring a single witness who talked about the knee, not a single witness to talk about the knee. They didn’t bring a single hired gun, like Dr. Foley, to come in and refute that the injury to the knee was caused by the March 5, 2006, accident.
[[Image here]]
This brings us to the shoulder. Like the knee, they didn’t bring a single witness to talk about the shoulder injury which led to the first two surgeries. They have Dr. Knezevich, who only talked about the third surgery. No one testified from the defendant — any of the defendants disputing that the shoulder injury, the labrum tear, was in fact caused by the March 5, 2006, accident, and that the labrum tear and that surgery that was performed in August of 2007 and the subsequent surgery that was performed in January of 2008 was caused by the March 5 accident.
[[Image here]]
Not a witness. Not one scintilla, piece of evidence did they have to talk about the shoulder and that the — and deny that the accident of March 5, 2006[,] caused the shoulder, caused the labrum tear, led to the first surgery, and ultimately the second surgery.
[[Image here]]
And that’s why they didn’t call anybody, because they knew they wouldn’t — they couldn’t — they probably couldn’t get anybody to say it was the shoulder. They couldn’t find any evidence.
[[Image here]]
The unapportioned damage, and that’s zero, and here’s why. We had two live neck surgeons testify for you in this trial, and they both agreed 100 percent, Dr. Tresser and Dr. Nucci [plaintiffs expert] agree that 100 percent of the neck problems are from the March '06 accident and zero percent of the neck problems are for the October 2004 accident.
II. ANALYSIS
A. Limitation of Dr. Knezevich’s Testimony
Because this issue involves an evidentia-ry matter, we review it under the abuse of *71 discretion standard. See First Republic Corp. of Am. v. Hayes, 431 So.2d 624, 626-27 (Fla. 3d DCA 1983) (stating that exclusion of an expert witness for violation of pretrial orders is a harsh remedy which should be used sparingly).
State Farm filed an amended expert witness list sixty-nine days before trial that for the first time listed Dr. Kneze-vich as an expert in orthopedic medicine and surgery. In accord with pretrial procedure, State Farm further provided a summary of his opinion testimony, supplemental answers to expert witness interrogatories, his full report detailing his findings, and made him available for deposition, of which opportunity Ms. Thorne’s counsel availed himself. Dr. Knezevich’s opinion was that all three shoulder surgeries and her knee surgery were unrelated to the 2006 accident. Despite the fact that Ms. Thorne knew about Dr. Kneze-vich and had deposed him, upon her motion the trial court limited Dr. Knezevieh to testifying only about the third shoulder surgery which had been recently performed.
A trial court has discretion to exclude testimony from a witness not disclosed pursuant to a pretrial order. But Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla.1981), requires a finding of such prejudice before discretion may be exercised. In the Binger context, prejudice is “surprise in fact.” Id. Further, exclusion is a drastic remedy to be utilized only in compelling circumstances. See Clair v. Perry, 66 So.3d 1078, 1080 (Fla. 4th DCA 2011); see also Harrell v. Aztec Envtl., Inc., 921 So.2d 805 (Fla. 1st DCA 2006).
There are a number of factors available for the trial court’s consideration in determining whether to exercise its discretionary power to exclude a witness. The record before us does not evidence that the late-filing of the amended expert witness list naming Dr. Knezevieh for the first time sixty-nine days before trial caused the necessary prejudice to Ms. Thorne.
Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court’s exercise of discretion are: (i) the objecting party’s ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party’s possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
Binger, 401 So.2d at 1314. State Farm met its burden to show that it fulfilled the requirements that Binger outlined to effectively mitigate the late-filed disclosure of Dr. Knezevieh and thereby curing any prejudice Ms. Thorne might encounter. The trial court allowed Dr. Knezevieh to testify about the third shoulder surgery only based on the fact that it had only been performed three months before trial. But we fail to see how this allowed State Farm and Mr. Thomas any benefit from Dr. Knezevich’s limited testimony when all three shoulder surgeries and the knee surgery were performed after the 2006 accident. In this regard, we conclude that the trial court abused its discretion in limiting the testimony of Dr. Knezevieh. See also Chin v. Caiaffa, 42 So.3d 300 (Fla. 3d DCA *72 2010); Phillips v. Ficarra, 618 So.2d 312 (Fla. 4th DCA 1993); Melrose Nursery, Inc. v. Hunt, 443 So.2d 441 (Fla. 3d DCA 1984).
The prejudice the trial court’s ruling caused State Farm and Mr. Thomas in limiting Dr. Knezevich’s testimony was compounded by the use Ms. Thorne’s counsel made of his testimony in closing argument, as discussed below.
B. The Striking of the Testimony of Dr. Bain re: Seatbelt and Causation
Although this is an evidentiary issue, we review it de novo. Marsh v. Valyou, 977 So.2d 543, 547 (Fla.2007) (“We review Frye issues de novo, with general acceptance considered as of the time of the appeal.” (citing Castillo v. E.I. Du Pont De Nemours & Co., Inc., 854 So.2d 1264, 1268 (Fla.2003))).
Dr. Bain would have testified that the injuries to Ms. Thorne’s neck and knee could not have happened had Ms. Thorne been wearing her seatbelt. This testimony was precluded upon Ms. Thorne’s counsel’s Frye challenge. It is clear that Dr. Bain was offering his opinion as to causation, although stated in the negative. But the supreme court in Marsh specifically stated that an expert’s opinion is based on the expert’s training and experience, 977 So.2d at 548, and that “ ‘[m]edical expert testimony concerning the causation of a medical condition will be considered pure opinion testimony — and thus not subject to Frye analysis — when it is based solely on the expert’s training and experience.’ ” Id. (quoting Gelsthorpe v. Weinstein, 897 So.2d 504, 510 (Fla. 2d DCA 2005)). And Ms. Thorne’s counsel specifically admitted at the hearing that biomechanics is not a new or novel science. Because Frye does not apply to testimony of a causal link between trauma and injury, id. at 550, the trial court erred in precluding Dr. Bain from giving his opinion on the lack of causal link between the 2006 accident and Ms. Thorne’s face and knee injuries.[6]
C. The High-Low Agreement
The high-low agreement in this case is not a true Mary Carter agreement, which has been outlawed in Florida. See Dosdourian, 624 So.2d at 246 (“We are convinced that the only effective way to eliminate the sinister influence of Mary Carter agreements is to outlaw their use.”).[7] But the facts of Dosdourian make it analogous to the case before us.
In Dosdourian, the settling defendant would remain in the lawsuit through judgment after reaching an agreement with the plaintiff that she would pay only up to her policy limits. Id. at 242. Over the objection of the nonsettling defendant, the agreement was not introduced into evidence at trial, and the jury found the settling defendant 55% liable for the plaintiffs injuries, the nonsettling defendant 35% liable, and the plaintiff 10% liable. The supreme court analogized this agreement to a Mary Carter agreement and— because the court was outlawing such agreements prospectively only — ordered that on remand the agreement could be allowed to stand but had to be disclosed to the jury at trial.[8] The agreement in Dos- *73 dourian was very similar to the high-low agreement between Ms. Thorne and the 2004 defendants. It is sufficiently similar that Dosdourian demands that it be disclosed to the jury.
The supreme court in Dosdourian addressed the following certified question:
IS A NON-SETTLING DEFENDANT ENTITLED TO HAVE THE JURY INFORMED OF A SETTLEMENT AGREEMENT BETWEEN THE PLAINTIFF AND ANOTHER DEFENDANT WHEREBY THE SETTLING DEFENDANT’S OBLIGATION IS FIXED BUT THE SETTLING DEFENDANT IS REQUIRED TO CONTINUE IN THE LAW SUIT?
Id. at 242. In addressing the particular facts of the case before it, the supreme court held:
Consistent with our decision to ban all future agreements in which the settling defendant remains in the case, we believe that the same policy reasons requiring the disclosure of secret settlement agreements in the “Mary Carter” line of cases apply here, even though the motivations of the settling parties are not as clear. While [plaintiffs] agreement with [the settling defendant] was not the usual Mary Carter agreement, we believe that it falls within the scope of secret settlement agreements which are subject to disclosure to the trier of fact under the principles of Ward v. Ochoa [, 284 So.2d 385 (Fla.1973) ]. As noted by the court below, “[t]he integrity of our justice system is placed in question when a jury charged to determine the liability and damages of the parties is deprived of the knowledge that there is, in fact, no actual dispute between two out of three of the parties.” Dosdourian [v. Carsten ], 580 So.2d [869,] 872 (Fla. 4th DCA 1991) ]. Thus, we answer the certified question in the affirmative.
Id. at 247. Here, on remand at retrial, any high-low agreement must be disclosed to the jury.
D. Plaintiffs Closing Argument
After having successfully limited the extent of State Farm’s and Mr. Thomas’ expert testimonies, Ms. Thorne’s counsel’s closing argument repeatedly suggested to the jurors that:
— The defense did not bring a single ■witness to speak to the claimed knee injury;
— The defense did not bring “a single hired gun” to refute the causation of the knee injury;
— The defense had no witness to speak to the shoulder injury claim that necessitated the first two shoulder surgeries; and,
— The reason the defense called no one was because the defendants could not find such evidence.
When defense counsel objected during closing argument, the trial court overruled the objection thereby permitting Ms. Thorne’s counsel to continue on this theme. And continue on is what transpired. Ms. Thorne’s counsel’s further argument suggested a lack of a scintilla of *74 evidence offered by the defendants and contended the defense’s theory — that the 2006 accident did not cause the damages for which the surgeries were necessary— was merely speculation and further that this speculation was “simply an attempt ... to avoid responsibility.” Ms. Thorne’s counsel concluded his closing argument with multiple statements of “shame on these defendants.”
The law on this point is clear: “Case law indicates it is improper for a lawyer, who has successfully excluded evidence, to seek an advantage before the jury because the evidence was not presented.” JVA Enters., I, LLC v. Prentice, 48 So.3d 109, 115 (Fla. 4th DCA 2010) (citing Carnival Corp. v. Pajares, 972 So.2d 973, 975-76 (Fla. 3d DCA 2007)).
Similar to Ms. Thorne’s case, in JVA, the trial court excluded opinion evidence of a party’s susceptibility to future injuries. In closing argument, the party who had obtained the exclusion of evidence stated: “[W]here is the testimony to support the speculation of some big, bad neck injury, or shoulder [injury] in the past? Where is the testimony or evidence?” Id. at 115 (alterations in original). In reversing the judgment against the defendants, the Fourth District concluded that the argument was prejudicial because it improperly implied that the failure to offer the testimony was because the defendant had no favorable testimony to present to the fact finder. Id. (citing Carnival Corp., 972 So.2d at 975); see also Hernandez v. Home Depot U.S.A., Inc., 695 So.2d 484, 485 (Fla. 3d DCA 1997) (holding that the error in excluding the plaintiffs expert testimony on the issue of negligence was unfairly exacerbated and compounded when in closing defense counsel stated: “What is the evidence that we were negligent?”).[9]
In Carnival Corp., 972 So.2d 973, trial counsel successfully obtained an order excluding testimony on the medical standard of care and after excluding such testimony, commented to the jury that the opposing party failed to offer the very testimony counsel had successfully excluded. “These comments were improper as counsel implied that Dr. Diskin’s failure to offer testimony regarding the standard of care of Carnival’s doctors was because Carnival had no favorable testimony to provide.” Id. at 976. We agree with the Third and Fourth Districts that arguments of this nature are “disingenuous and misleading.” The extent and nature of Ms. Thorne’s counsel’s closing argument has caused reversible error.
Objectionable was Ms. Thorne’s counsel’s contention in closing that the defendants’ evidence and argument were an attempt “to avoid responsibility” and, as a result, the defendants exhibited shameful conduct. A similar argument was offered in Intramed, Inc. v. Guider, 93 So.3d 503, 505 (Fla. 4th DCA 2012) (holding that “[s]erial improprieties in the plaintiffs closing argument, when combined with the procedural prejudice of the untimely disclosure of an expert, operated to deny the defendant a fair trial”). There, counsel argued, “They have never taken responsibility ... and they still take zero responsibility.” Id. at 507. Although counsel in Intramed did not use any variant of the word “shame” in describing the defen *75 dant’s conduct, this was the clear inference, and counsel argued repeatedly that the defendant “won’t care.” Id. Initially the Fourth District observed that the “trial court’s rulings early in the closing argument green lighted this theme for plaintiffs counsel.” Id. The court then noted two rationales to support the improper nature of the argument. First, “[t]he closing argument shifted the focus of the case from compensating the plaintiff to punishing the defendant.” Id. Next, as to damages, its purpose is to compensate, “not to make the defendant care, ‘take responsibility,’ or say it was sorry. Counsel’s arguments improperly suggested that the defendant should be punished for contesting damages at trial and that its defense of the claim in court was improper.” Id.
Because Ms. Thorne’s counsel’s repeated arguments in closing were improper and allowed over objection, we agree with State Farm and Mr. Thomas that reversal is mandated.
III. CONCLUSION
State Farm’s and Mr. Thomas’ arguments about these evidentiary errors at trial have merit: The combination of the trial court’s limiting Dr. Knezevich’s expert testimony, excluding Dr. Bain’s opinion testimony based on a Frye challenge, excluding from the jury’s consideration evidence of the high-low agreement, and allowing multiple improper statements in plaintiffs closing argument all constituted reversible error. Accordingly, we conclude that a new trial is warranted.
Affirmed in part, reversed in part, and remanded for a new trial.
KELLY and MORRIS, JJ., Concur.

. The defendants who were sued for the 2004 accident retained Dr. Steven Tresser, a board-certified neurosurgeon, to testify regarding Ms. Thorne’s neck injury. During discovery, he confirmed that he had also been asked to review her claims as they related to the 2006 accident. His opinion, given during his deposition, was that Ms. Thorne did not incur any permanent injury as a result of either the 2004 or the 2006 accident. At trial and during his direct examination by counsel for the 2004 defendants, Dr. Tresser’s testimony was limited to his opinion that there was no permanent neck injury as a result of the 2004 accident. Mr. Thomas' counsel moved to call Dr. Tresser as his own witness to opine that there was no permanent neck injury from the 2006 accident either. This motion was made despite the fact that Dr. Tresser had not been named pretrial on Mr. Thomas’ expert witness list. But the trial court precluded Mr. Thomas’ counsel from calling Dr. Tresser as its own witness. As in the case of Dr. Kneze-vich (discussed infra), Ms. Thorne's counsel in closing argument highlighted the lack of defense evidence tying the neck injury to the 2006 accident and even went so far as to say that Dr. Tresser agreed with Ms. Thorne's expert that the 2006 accident was the sole cause of her neck problems.

. The 2004 defendants are appellees Patricia Temples, Marshall Temples, and Eric Wise-man.

. The 2004 defendants entered into a high-low agreement with Ms. Thome, a provision of which required that they not appeal an adverse verdict. Pursuant to Florida Rule of Appellate Procedure 9.020(g)(2) (defining an appellee as "[e]very party in the proceeding in the lower tribunal other than an appellant”), they are listed in the style of this case despite not appearing in this appeal. State Farm settled its dispute with the 2004 defendants prior to trial, so the only issues in this appeal relate to the 2006 incident.

. Frye v. United States, 293 F. 1013, 1014 (D.C.1923) ("[W]hile courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.”).

. Booth v. Mary Carter Paint Co., 202 So.2d 8 (Fla. 2d DCA 1967), rejected by Ward v. Ochoa, 284 So.2d 385 (Fla.1973).

. We dismiss as not preserved for review Ms. Thome's argument that Dr. Bain lacked the qualifications to give an expert biomechanical opinion.

. Dosdourian provides an expansive discussion on the evils of Mary Carter agreements and their deleterious effect on the judicial system. 624 So.2d at 243-26.

.
We recognize that until this opinion Mary Carter agreements were legal in Florida, *73 and we are loath to penalize those who have entered into such agreements. In some instances it might even be impossible to restore the parties to the status quo if such agreements were set aside. Therefore, our holding shall be prospective only and shall not affect the legality of any such agreements that have been entered into pri- or to the date of this opinion. Accordingly, we must decide the instant case upon the premise that the settlement agreement was legal.
Dosdourian, 624 So.2d at 246.

. The Fourth District faced a similar argument recently in Saunders v. Dickens, 103 So.3d 871 (Fla. 4th DCA 2012), where it applied the same principle regarding reversible closing argument error but found that Chin and Carnival Corp. were distinguishable from the case before the court. The Fourth District affirmed the final judgment in favor of the defendants because it found that defense counsel had not argued improperly in closing that the plaintiff had provided no evidence of causation.