NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GASPAR'S PASSAGE, LLC, an Ohio )
limited liability company, )
)
      Appellant, )
)
v. )    Case No. 2D17-55
)
RACETRAC PETROLEUM, INC., a )
Georgia corporation, )
)
      Appellee. )
_____)

Opinion filed April 4, 2018.

Appeal from the Circuit Court for Pasco
County; Linda Babb, Judge.

Nicole Deese Newlon and William P.
Cassidy, Jr., of Johnson & Cassidy, P.A.,
Tampa, for Appellant.

Mary Ellen R. Himes and David O'Quinn of
Fidelity National Law Group, Fort
Lauderdale, for Appellee.


MORRIS, Judge.

      Gaspar's Passage, LLC, appeals a final judgment entered in favor of

RaceTrac Petroleum, Inc., on its amended counterclaim for an equitable lien. This

action is the result of a dispute over the sale of commercial property in Pasco County

that had been held in trust.[1]  RaceTrac purchased the property, but subsequent to the sale, one of the trust beneficiaries challenged the trustee's authority to enter into and complete the sale.  As a result, Gaspar, the successor trustee, sued the title insurance company and RaceTrac.  RaceTrac, in turn, filed two counterclaims against Gaspar for an equitable lien and unjust enrichment as well as a cross-claim against the original trustee and a third-party complaint against the original trustee and one of the trust beneficiaries.  The counterclaims against Gaspar were based on RaceTrac's assertion that it had paid off various liens, back taxes, and certain mortgages.  Although the trial court determined that RaceTrac had wrongfully obtained the property, it also determined that RaceTrac was entitled to an equitable lien for the amount of money it expended in acquiring the property.  Thereafter, the trial was continued on the remaining issues to permit RaceTrac to add indispensable parties.  In this appeal, Gaspar argues that the trial court erred by refusing to permit it to take a deposition of RaceTrac's expert witness or to add additional witnesses or exhibits after granting the continuance of the trial.  We agree and therefore reverse on this issue.  We affirm the other issues raised by Gaspar, but we note that our reversal may necessitate reconsideration of those issues on remand.[2]

---

[1]The property was held by the Captain Wesley Trust which had been created by an unrecorded trust agreement dated November 29, 2005.

[2]As its second issue, Gaspar argues that the trial court erred by excluding testimony from Gaspar's witness, J. Robert Brown.  At trial, RaceTrac made numerous objections at various points during Brown's testimony.  While RaceTrac objected solely on the basis of hearsay at certain points, it also objected on the basis of both hearsay and the best evidence rule at other points, and those objections were sustained without explanation.  Our reversal on the first issue requires the trial court to conduct further proceedings.  To the extent that the trial court determines on remand that Gaspar should be permitted to add its requested additional exhibits, the admission of those exhibits could require reconsideration of RaceTrac's objections to Brown's testimony.
Gaspar's third issue is a challenge to the trial court's award of

## BACKGROUND

During the pendency of the proceedings below, Gaspar filed an amended motion for partial summary judgment seeking to void the quitclaim and general warranty deeds that RaceTrac obtained during the sale of the property. The trial court granted the motion and voided the deeds, finding that the trustee had lacked authority to sell the property.

A bench trial commenced in March 2015, but upon RaceTrac's request, the trial court continued the trial to allow RaceTrac to amend its cross-complaint to add additional trust beneficiaries as indispensable parties to the action. During a discussion regarding the continuation, the trial court indicated that it expected that additional discovery would be necessary. Specifically, the trial court stated: "So I am going to continue this. If there needs to be some discovery taken about this, sobeit [sic]. But I'm going to continue this and allow that to happen."

The trial court also determined that RaceTrac was entitled to an equitable lien in the amount of $1,841,387.83 subject to an upward adjustment if the trial court later determined that an adjustment was necessary. That sum was comprised of the amount that RaceTrac paid to the trust's lender plus one-half of the amount RaceTrac paid to satisfy a second mortgage on the property. Accordingly, the trial court entered a partial final judgment voiding the deeds and awarding RaceTrac the equitable lien.

RaceTrac subsequently filed its amended counterclaim, cross-claim, and third-party complaint. The changes relevant to this appeal were the addition of two

prejudgment interest. While we reject the substance of Gaspar's arguments pertaining to this award, we note that due to our reversal on the first issue, the case could result in a different outcome on remand. Thus the amount of the prejudgment interest award could change depending on the resolution of the issue of Gaspar's request for additional discovery, witnesses, and exhibits.

indispensable parties (the original trustee and a trust beneficiary) to the claims against Gaspar for an equitable lien and unjust enrichment as well as RaceTrac's request for an equitable lien and judgment that, for the first time, included amounts for "carrying costs and expenses and the value of improvements incurred in the Subject Property since July 21, 2011." RaceTrac's original demand for relief did not include a request for carrying costs and expenses or the value of improvements. As a result of RaceTrac's amended pleading, Gaspar amended its answer and affirmative defenses to include defenses of setoff and the exclusion of rental value from the compensation due to RaceTrac for any improvements it made to the property. After the filing of its amended counterclaim, cross-claim, and third-party complaint, RaceTrac engaged in limited discovery.[3]

A March 3, 2016, hearing was conducted to address a motion for a supersedeas bond, a motion for stay in RaceTrac's separate appeal, a motion to compel, and a motion to extend RaceTrac's lis pendens on the property. But at the hearing, RaceTrac raised the issue of whether Gaspar could engage in further discovery in preparation for the continued trial that was scheduled for November 2016. This issue had not been previously raised and was raised without notice to Gaspar. After other discussions not relevant to this appeal and after requesting a date for the continued trial, RaceTrac's counsel brought up the issue of one of RaceTrac's experts. The following discussion then ensued in relevant part:

_____

[3]In its brief, RaceTrac at first asserts that it "did not conduct discovery," but then within the same sentence acknowledges it engaged in "limited discovery . . . focused on the Trust and the parties [which] only requested updated information regarding previously propounded discovery regarding Gaspar's development of the Wesley Chapel Property, if any." To the extent that RaceTrac believes that a document entitled "Second Request for Production" which requests updated information from the opposing party concerning issues involved in the case should not be considered "discovery," we disagree.

- 4 -

[RaceTrac's counsel]:  I don't know if you're going to open this up--essentially, we have the same parties--if you're going to open up the whole calendar to more discovery and experts and all that or if you're going to say, "Look.  You guys already did this.  We're not going to take a second bite at the apple."

The Court:  Yeah.  We're starting from where we stopped.

[RaceTrac's counsel]:  Okay.

The Court:  We're not starting over.

[RaceTrac's counsel]:  Okay.  Okay.  Okay.  But I didn't know if they were going to have another bite at the apple for an expert, because we have an expert who essentially was going to testify.  We have a witness from RaceTrac who's going to testify about all the--the engineer. . . .  [A]nd then . . . a real estate expert to testify about what value [the modifications that RaceTrac made] bring to the property.  Those are essentially the two witnesses we have left.  I don't know if we'll have to add testimony.

The Court:  Those are not new witnesses.

[RaceTrac's counsel]:  No.  Those are the witnesses we had.

The Court:  Those are the witnesses you had.  I'm not going to allow them--

[RaceTrac's counsel]:  Your Honor, you didn't--

The Court:  Just because they got a new attorney.

[RaceTrac's counsel]:  Oh, no.  Those are our witnesses--

The Court:  No.  I know that.

[RaceTrac's counsel]:  --that you stopped the trial.

The Court:  Right.  But if they hadn't listed people--

[RaceTrac's counsel]:  Okay.

The Court:  --experts in opposition--

[RaceTrac's counsel]:  Okay.

- 5 -

The Court: --just because you get a new attorney doesn't mean you--I mean, we started this trial for a particular--we stopped it for a particular purpose.

. . . .

[Gaspar's counsel]: I just wanted to ask, as a person who wasn't there,[4] was it stopped last time because it just didn't--

[RaceTrac's counsel]: It stopped--

[Gaspar's counsel]: --ran out of time? You all would have gone on and tried the damages?

The Court: No. It--well, we would have tried. There were essential people who were left out of the trial. We were--[the original trustee] wasn't there. [The original trustee] wasn't listed as a person. [The original trustee] did everything in the case and--

[RaceTrac's counsel]: He was a party to the counterclaim.

[Gaspar's counsel]: Yeah. I knew that.

. . . .

[Gaspar's counsel]: [Y]ou were ready to try--

[RaceTrac's counsel]: We were ready to try it. We had everybody.

The Court: Yeah, we were ready to--yeah, we were not just ready, we were going and--

[RaceTrac's counsel]: Right.

[Gaspar's counsel]: Okay. And I only asked, of course, because I am not setting it and I do want to be careful to make sure Gaspar Passage's would have every opportunity to be able to try the damages case with its witnesses and experts that--

[RaceTrac's counsel]: It had no experts. It didn't name any.

---

[4]The attorney who attended the March 3, 2016, hearing was not Gaspar's trial attorney but was the attorney who represented Gaspar in RaceTrac's appeal of the partial final judgment that voided the deeds.

- 6 -

[Gaspar's counsel]: And so that's what I was asking. You-all were getting ready to try?

The Court: Yeah. And that's the thing.

[RaceTrac's counsel]: Okay.

The Court: I mean, these aren't new experts. These are people that were listed before.

[RaceTrac's counsel]: Okay.

The Court: Gaspar's Passage has been in this case from the get-go, so Gaspar's Passage can't start adding experts that they didn't list originally . . . .

There was no further discussion on this issue.

In June 2016, three months prior to the continued trial date, Gaspar filed a notice of case management conference, wherein it noticed its intent to have the trial court consider Gaspar's request to designate one expert witness on the issue of damages, to take the deposition of RaceTrac's expert witness, and to obtain a copy of any indemnity agreement in RaceTrac's possession. In response, RaceTrac filed a motion to strike, relying on the trial court's March 3, 2016, ruling related to additional discovery as the reason for striking Gaspar's requests.

The court conducted a hearing on RaceTrac's motion to strike in July 2016. RaceTrac's counsel recited the case history to the trial court, asserting that when the trial court initially agreed to continue the trial, the trial judge had been "emphatic . . . that we were done [with discovery]" and that just because Gaspar had retained a new attorney did not mean it was entitled to a repeat of the pretrial proceedings. Gaspar's counsel, who was not the appellate counsel that argued on behalf of Gaspar at the March 3, 2016, hearing, argued in relevant part that Gaspar wanted to include two new experts whose testimony would "go directly to the issue of damages." According to

Gaspar, one of the witnesses would testify on the issue of whether RaceTrac should have proceeded with the purchase of the property which, if answered in the negative, would "negat[e] their claim for damages." The other witness was relevant to Gaspar's newly added affirmative defenses of setoff or lost rental value, which were based on Gaspar's claim that it was entitled to the rental value of the property for the time period that RaceTrac was wrongfully in possession of the property.[5] Gaspar's counsel asserted that both witnesses were necessary to refute RaceTrac's contention that it was entitled to additional damages above and beyond the $1,841,387.83 equitable lien already imposed by the trial court.[6] Gaspar's counsel asserted that the witnesses were

_____

[5]Counsel at first referred to the affirmative defense of setoff but then she subsequently explained that the expert would opine on the issue of lost rental value for the period of time that Gaspar was deprived of the use of the property. We note that the lost rental value issue, as articulated by Gaspar's counsel at the hearing, is different from the written affirmative defense wherein Gaspar argued that rental value should be excluded from any damages that RaceTrac was owed due to improvements it made to the property. However, this discrepancy does not change the result because regardless of whether the expert would opine on whether Gaspar was entitled to lost rental value for the time period that RaceTrac was in possession of the property or whether rental value should be excluded from any damages awarded to RaceTrac, both of those topics relate to the issue of a setoff of Gaspar's damages against RaceTrac's damages.

[6]Specifically, Gaspar's counsel noted that RaceTrac "has already been awarded the 1.84 million in the equitable lien [but] it claims it is entitled to additional damages beyond the money that it paid for the property." Gaspar's counsel explained that the first witness "will refute the fact that RaceTrac should have proceeded with the purchase, thereby negating their claim for damages. So it directly goes to RaceTrac's claim for damages, which is at issue in this second part of the trial." In relation to the second witness, Gaspar's counsel argued that if RaceTrac was "entitled to the 1.84 million it paid, my client should be or at least this Court should consider whether my client is entitled to rental value damages for that time period that he was deprived use of the property."

In its brief, RaceTrac argues that Gaspar's belated discovery requests addressed issues already decided or otherwise moot. But the record refutes that argument as it is clear that the trial court retained jurisdiction to adjust the equitable lien upward and that RaceTrac sought additional damages above and beyond the equitable lien amount. In addition to the original equitable lien amount, RaceTrac sought "property taxes incurred since July 21, 2011, plus other carrying costs and expenses and the value of improvements incurred in the Subject Property since July 21, 2011,

"willing to produce reports and be deposed on an expedited basis" so that the trial could proceed as scheduled. Gaspar's counsel also indicated that Gaspar wanted RaceTrac to produce an indemnity agreement which Gaspar contended was required to be produced pursuant to Florida Rule of Civil Procedure 1.280(b)(2).

Gaspar's counsel argued that if Gaspar was not permitted to conduct additional discovery, it would be denied procedural due process since the discovery issue had not been previously noticed prior to the March 3, 2016, hearing. Gaspar's counsel also argued that once RaceTrac amended its counterclaim and Gaspar amended its answer and affirmative defenses, new pleadings and parties were added. Thus, Gaspar's counsel argued that an immediate discovery cutoff prevented Gaspar from its right to be heard. Gaspar also maintained that it would be error to prevent the addition of the new witnesses where over sixty days remained before trial and where Gaspar was willing to agree to an expedited discovery schedule.

RaceTrac, in rebuttal, argued that in amending the counterclaim, it did not change the allegations of its counterclaim relating to Gaspar and that, instead, it merely added two indispensable parties (the original trustee and a trust beneficiary). RaceTrac maintained that Gaspar had had sufficient time to conduct discovery but declined to do so and that, therefore, there was no due process violation. RaceTrac conceded it had no objection to providing a copy of the indemnification agreement. But RaceTrac maintained its objection to "all these additional witnesses and experts."

The trial court reiterated that this case involved a continued trial. The trial court explained that when it initially said it expected further discovery, "I meant about

plus interest, costs, attorneys' fees and any other relief this Court deems just and proper."

[the original trustee] and . . . the other trust, which was pertinent" during the first part of the trial. The trial court continued:

> Apparently, that is no longer pertinent, and so I expected that there would be no need for further discovery.
> Now, I do want [Gaspar's counsel] to have everything she needs to go forward because what we're looking at is damages. So anything, any paperwork that she may need . . . just get it to her, but I . . . really did not expect that we would be adding witnesses two years into the start of a trial.
> Gaspar's Passage, I understand that you're new in the case, but they're sort of stuck with what happened with the attorney that they hired back at the beginning.

The hearing then concluded with RaceTrac agreeing to provide the indemnification agreement. The trial court later entered an order granting RaceTrac's motion to strike, denying Gaspar's request to depose RaceTrac's witness and denying Gaspar's request to identify two additional witnesses on the issue of damages.

Subsequently, Gaspar moved to amend its exhibit list, seeking to add documents that it claimed were relevant to its "ability to prosecute its affirmative defenses and remaining claims . . . as well as its ability to defend against the claims asserted by" RaceTrac. These exhibits were comprised of notices of proposed property taxes for the years 2015 and 2016, emails, land surveys, a spreadsheet with listings of various sites and corresponding numbers, a document entitled "Broker's Opinion of Value," and an environmental site investigation report. One document was not described, and it was not attached to the motion; instead, a placeholder was attached indicating it was a confidential document.

At a hearing to address the motion, RaceTrac's counsel argued against the amendment by asserting that she had not seen the documents and "[w]e're in the middle of trial." Gaspar's counsel reminded the trial court that it had instructed RaceTrac to provide Gaspar's counsel with all the documents she needed. Gaspar's

counsel also argued that several of the documents she wanted to add were public record and that one of the documents, purportedly relating to a settlement discussion, was relevant to RaceTrac's claim for prejudgment interest. The trial court rejected Gaspar's arguments and denied Gaspar's motion to amend the exhibit list, explaining that "you can't include stuff as documents you're going to use at trial that you've never provided."

In September 2016, the trial resumed with the trial court reiterating that RaceTrac was entitled to an equitable lien. The trial court thereafter entered its final judgment on that claim adjusting the amount of the lien upward to include property taxes paid by RaceTrac as well as an award of interest on both the original equitable lien amount and property taxes that had been made a part of the equitable lien.[7] RaceTrac was ultimately awarded $2,401,524.83.

### ANALYSIS

We review "[a] trial court's determination with regard to a discovery request" for an abuse of discretion. Overton v. State, 976 So. 2d 536, 548 (Fla. 2007). We also review the trial court's decision to exclude late-disclosed witnesses or exhibits for an abuse of discretion. See Tomlinson-McKenzie v. Prince, 718 So. 2d 394, 396 (Fla. 4th DCA 1998); In re Estate of Lochhead, 443 So. 2d 283, 284 (Fla. 4th DCA 1983).

The trial court's refusal to allow additional discovery and to permit Gaspar to call additional expert witnesses was erroneous. The discovery issue was not noticed for hearing in contravention of Florida Rule of Civil Procedure 1.090(d), which requires that before ruling on a matter, a trial court must ensure that the issue was properly

---

[7]The trial court also granted Gaspar's motion to dismiss RaceTrac's other claim for unjust enrichment, but that claim is not the subject of this appeal.

noticed to all parties and called up for a hearing before the court. "[W]hen a court considers issues not noticed for hearing, the court denies the litigant due process, and any ensuing order or judgment must be reversed." In re Estate of Assimakopoulos, 228 So. 3d 709, 715 (Fla. 2d DCA 2017) (holding that trial court erred by considering party's ore tenus motion for expert witness fees where no motion on that issue had previously been made nor served on the opposing party and where the issue was not noticed for hearing); see also Ingaglio v. Ennis, 443 So. 2d 459, 461 (Fla. 4th DCA 1984) (holding that trial court erred by considering ore tenus motion to strike defendant's answer and affirmative defenses as a sanction where no notice was provided to the defendant and he had reason to believe the motion to compel answers to interrogatories had become moot due to his serving answers to the motion).

Here, no written motion to prohibit further discovery was filed with the court or served on Gaspar. Instead, RaceTrac essentially made an ore tenus motion at the March 3, 2016, hearing. But Gaspar had no reason to believe that such a motion would be made where: (1) RaceTrac had amended its complaint to add indispensable parties and to add a request for relief that sought damages for carrying costs and expenses and for improvements RaceTrac made to the property, (2) Gaspar amended its affirmative defenses, and (3) RaceTrac had itself engaged in limited discovery after the amendments. Further, because Gaspar was not provided with notice that the issue would be considered at the hearing, its trial counsel was not even present. Instead, Gaspar was represented by its appellate counsel who was representing Gaspar in RaceTrac's appeal of the partial final judgment that had been previously entered. Gaspar's appellate counsel had only minimal knowledge of the first phase of the trial proceedings, but still attempted to preserve Gaspar's right to present witnesses on the

issue of damages. However, Gaspar was woefully unprepared to argue the issue, and the trial court erred by ruling on it where no notice was provided to Gaspar. See In re Estate of Assimakopoulos, 228 So. 3d at 715-16; Ingaglio, 443 So. 2d at 461.

The trial court also erred when it refused to permit Gaspar to add additional witnesses which were crucial to its defense without conducting a required prejudice analysis. In order "[t]o satisfy due process considerations, parties must be given a meaningful opportunity to present evidence and be heard." AT & T Wireless Servs., Inc. v. Castro, 896 So. 2d 828, 832 (Fla. 1st DCA 2005). "Indeed, '[t]he right to call witnesses is one of the most important due process rights of a party[,] and accordingly, the exclusion of the testimony of expert witnesses must be carefully considered and sparingly done.' " Id. (first alteration in original) (quoting State v. Gerry, 855 So. 2d 157, 161 (Fla. 5th DCA 2003)); see also State Farm Mut. Auto. Ins. Co. v. Bowling, 81 So. 3d 538, 541 (Fla. 2d DCA 2012) ("A trial court should only exclude witnesses under the most compelling of circumstances . . . ." (quoting Keller Indus. v. Volk, 657 So. 2d 1200, 1203 (Fla. 4th DCA 1995))). This is especially true "when the witness sought to be excluded is a party's only witness or one of the party's most important witnesses because if the witness is stricken, that party will be left unable to present evidence to support [its] theory of the case." Bowling, 81 So. 3d at 541 (quoting Pascual v. Dozier, 771 So. 2d 552, 554 (Fla. 3d DCA 2000)); see also Keller Indus., 657 So. 2d at 1202-03.

Trial courts should not automatically foreclose the addition of expert witnesses as a matter of course without considering whether the opposing party will be prejudiced. In Binger v. King Pest Control, 401 So. 2d 1310, 1313-14 (Fla. 1981), the Florida Supreme Court explained that while "a trial court can properly exclude the

testimony of a witness whose name has not been disclosed in accordance with a pretrial order," it should not do so blindly but should instead "be <u>guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party</u>." (emphasis added.)

> Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases). If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.

Id. at 1314 (footnote omitted); see also Tomlinson-McKenzie, 718 So. 2d at 396.

This court has previously relied on Binger to conclude that a trial court erred by limiting the testimony of an expert witness where, sixty-nine days before trial, the appellant filed an amended witness list listing the expert witness for the first time. State Farm Mut. Auto. Ins. Co. v. Thorne, 110 So. 3d 66, 71 (Fla. 2d DCA 2013). The appellant had provided a summary of the expert's opinion testimony, supplemental answers to expert witness interrogatories, and the expert's full report detailing his findings. Id. The expert was also made available for deposition, and the appellee availed herself of that opportunity. Id. In concluding that the trial court abused its discretion, we explained that the appellant "met its burden to show that it fulfilled the requirements that Binger outlined to effectively mitigate the late-filed disclosure of [the expert] and thereby curing any prejudice [the appellee] might encounter." Id.

- 14 -

Here, Gaspar filed its notice of case management conference on June 20, 2016, which was three months prior to trial. In that notice, Gaspar requested to designate one additional expert witness on the issue of damages and to conduct two depositions of RaceTrac's expert witness.[8] RaceTrac moved to strike the notice. On July 7, 2016, which was still two-and-a-half months before trial, the court heard argument on RaceTrac's motion to strike. At that hearing, Gaspar's counsel explained that the two expert witnesses it wanted to call were relevant to: (1) the issue of RaceTrac's knowledge of Gaspar's interest in the property which could effectively negate RaceTrac's claim for damages above and beyond the equitable lien amount, and (2) Gaspar's affirmative defenses of setoff or the lost rental value. Thus, these witnesses were especially important to Gaspar's defense of the case. Gaspar's counsel asserted that the experts she wanted to add were "willing to produce reports and be deposed on an expedited basis . . . so that we can move forward with trial in September." In relation to the request to depose RaceTrac's expert, Gaspar's counsel further argued that she was "not asking for lengthy discovery," but was instead seeking to conduct expedited discovery "to depose the expert that's already been noticed."

Despite the fact that the discovery cutoff issue was never noticed for the March 3, 2016, hearing, and despite the fact that Gaspar's counsel offered to mitigate any prejudice to RaceTrac by conducting expedited discovery, depositions, and the production of expert reports, the trial court ruled that no further discovery or addition of expert witnesses would be allowed. But because the discovery issue was never properly noticed and because the trial court failed to consider whether RaceTrac would

---

[8]Gaspar also sought the production of the indemnity agreement previously referenced. However, as RaceTrac agreed to provide the agreement, that issue is not relevant to this appeal.

- 15 -

be prejudiced by the addition of the witnesses or by an expedited deposition of its own expert witness, the trial court denied Gaspar due process and abused its discretion. See Binger, 401 So. 2d at 1313-14; In re Estate of Assimakopoulos, 228 So. 3d at 716.

The error was compounded by the fact that at the March 3, 2016, hearing, Gaspar's trial counsel was not present. Although RaceTrac attempts to fault Gaspar for failing to have its trial counsel present, we reject the argument that Gaspar should have been prepared to address the discovery issue where the hearing was set to consider motions dealing with issues other than discovery and where no notice was provided to Gaspar that the discovery issue would be addressed.

The trial court also abused its discretion by denying Gaspar's motion to amend its exhibit list in August 2016, several weeks before trial. The intended exhibits became relevant as a result of the amended pleadings, but again, the trial court failed to conduct the required prejudice analysis before denying the motion. See Tomlinson-McKenzie, 718 So. 2d at 396.

RaceTrac contends that it raised the issue of prejudice at the September 8, 2016, hearing when the trial court considered Gaspar's request to amend the exhibit list. The transcript reflects that RaceTrac's counsel raised objections of hearsay, privilege, and gamesmanship. RaceTrac's counsel also asserted that because trial was set for September 20, 2016, the late production of the exhibits meant that she would not have time to depose anyone or to check the authenticity of the documents. However, the transcript also reflects that RaceTrac's counsel acknowledged that if Gaspar's counsel had contacted her, she [RaceTrac's counsel] likely would not have objected but would have instead agreed to allow some of the requested additional exhibits. Further, RaceTrac's counsel conceded that "[t]here are a couple of things in there that they

- 16 -

actually already have as an exhibit."  RaceTrac's counsel concluded her argument by asserting that Gaspar was engaging in gamesmanship and noting to the trial court that "you have not tolerated that in this case in the past and I hope you won't tolerate it anymore."

In response, Gaspar's counsel noted that there had never been a finding of malfeasance by Gaspar.  Gaspar's counsel also contended that at least one of the documents could not have been previously produced because it was not yet in existence when RaceTrac requested it.  She also asserted that "the vast majority of the documents . . . are public record."

Ultimately, the trial court agreed with RaceTrac's hearsay and gamesmanship arguments, concluding that Gaspar was not entitled to add additional exhibits "that you've never provided."  But a finding that a party engaged in gamesmanship is not the equivalent of a finding that RaceTrac would be prejudiced by the addition of the exhibits.  This is especially true where RaceTrac conceded that: (1) if she [RaceTrac's counsel] had been contacted by Gaspar's counsel, she likely would not have objected to at least some of the additional exhibits, and (2) some of the requested additional exhibits were already part of Gaspar's exhibits.  Further, if, as Gaspar's counsel alleged, some of the exhibits were public record, RaceTrac would have difficulty establishing prejudice.  See Tomlinson-McKenzie, 718 So. 2d at 396 ("[A]n objecting party may not, having closed its eyes to the existence of evidence prior to trial, claim that the admission of that evidence would disrupt the orderly and efficient trial of the case.").  Indeed, the transcript reflects that RaceTrac was aware of at least the property

appraiser records—which are public record—because its expert had relied on a report that incorporated those records.[9]

Consequently, because Gaspar was denied procedural due process and because the trial court denied Gaspar's requests to add additional expert witnesses and amend its exhibit list without making any findings regarding whether RaceTrac would be prejudiced by the changes, we must reverse and remand for further proceedings.

Reversed and remanded.

SILBERMAN and CRENSHAW, JJ., Concur.

---

[9]The fact that the expert utilized the report to prepare an appraisal that was not going to be used at trial is not dispositive. The point is that RaceTrac had full knowledge of at least some of the public record information that Gaspar wanted to utilize as an exhibit.